Heidi G. Goebel, 10343
Timothy J. Curtis, 10195
GOEBEL ANDERSON PC
10 West 100 South, Suite 450
Salt Lake City, Utah  84101
Telephone:  (801) 441-9393
HGoebel@GAPClaw.com
TCurtis@GAPClaw.com

Brian D. Penny (*Admitted Pro Hac Vice*)
Laura Killian Mummert (*Admitted Pro Hac Vice*)
GOLDMAN SCARLATO & PENNY, P.C.
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: (484) 342-0700
penny@lawgsp.com
mummert@lawgsp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADELAIDE SPENCE, on behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BASIC RESEARCH, LLC, BREMENN RESEARCH LABS, LLC d/b/a BREMENN CLINICAL, DENNIS GAY, MITCHELL K. FRIEDLANDER, and TIFFANY STROBEL<br><br>　　　　Defendants. | **AMENDED CLASS-ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>No. 2:16-cv-00925-CW<br><br>Judge Clark Waddoups |

Plaintiff, Adelaide Spence, by and through her attorneys, alleges the following upon information and belief, except for those allegations that specifically pertain to her, which are based on Plaintiff's personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of purchasers of the dietary weight loss supplement Vysera-CLS, which Defendants describe as a "miracle pill" and "the amazing Cupcake Diet." Defendants market Vysera-CLS as a starch (or carbohydrate) blocker that will "reshape your entire body in 30 days" by causing significant weight and fat loss from the waist, hips, thighs, and butt through the malabsorption of calories. "It's sort of like eating a whole donut, but only absorbing a fraction of the calories …." Defendants falsely promise that Vysera-CLS will achieve these results "without requiring anybody to follow a low-calorie diet or work out for hours every day!"

2.     In truth, Vysera-CLS does not cause significant weight or fat loss. Scientific knowledge has long demonstrated that substantial weight loss through malabsorption of calories alone without diet and exercise, as Defendants claim Vysera-CLS does, is not scientifically feasible.  In short, Defendants' claims are false.

3.     Defendants further represent that Vysera-CLS is backed by "groundbreaking research" published in the *British Journal of Nutrition*. In truth, the "clinical study" that Defendants describe has never been published in the *British Journal of Nutrition*.  Another false statement.

4.      According to the Centers for Disease Control and Prevention, 69% of adults in the United States are overweight or obese.[1] As a result, fraudulent weight loss products are an enormous problem in the United States. In an October 2011 study by the Federal Trade Commission, the FTC stated that an estimated 5.1 million U.S. adults purchased and used fraudulent weight-loss products during the preceding year. The FTC study found that "[m]ore consumers were victims of fraudulent weight-loss products than of any of the other frauds covered by the 2011 survey." The FTC described the prototypical fraudulent weight-loss claim as products that were promoted "as enabling consumers who used the product to easily lose a substantial amount of weight or to lose the weight without diet or exercise." [2]

5.      Defendants have capitalized on the U.S. obesity epidemic with regard to Vysera-CLS and numerous other dietary supplements by perpetrating schemes to defraud consumers through a web of interrelated, closely-held limited liability companies that oversee the "research," publication, manufacturing, marketing, sales, and distribution of such products in a willful effort to deceive the public as to the true identity and nature of those involved in the illegal business enterprise(s). At all relevant times, Defendants have operated common business enterprise(s) while engaging in the deceptive acts and practices alleged herein, and therefore may be held jointly and severally liable for such acts and practices.

---

[1] http://www.cdc.gov/nchs/fastats/obesity-overweight.htm, last visited January 30, 2015.
[2] The FTC Survey is available at http://www.ftc.gov/sites/default/files/documents/reports/consumer-fraud-united-states-2011-third-ftc-survey/130419fraudsurvey_0.pdf, last visited June 10, 2015.

6.     Although Defendants' common business enterprise creates new companies for the manufacture, advertisement, distribution and sale of most, if not all, of its dietary supplement products, Defendants Gay and Friedlander control all of the entities within the web of interrelated companies.

7.     Each of the Defendants pulls from a pool of employees that are used interchangeably between the companies or entities. Similarly, each of these companies utilizes centralized accounting, payroll, and record-keeping functions. These result in funds routinely being transferred or commingled between the various companies or entities controlled by Defendants Gay and Friedlander.

8.     The interrelationship of the Defendants is also evidenced by the fact that almost all of them occupy the same office address in Salt Lake City, Utah.

9.     As part of their pervasive pattern of wrongful conduct, Defendants have utilized (and continue to utilize) the U.S. mail and interstate wire facilities, including the internet, point-of-sale purchase advertisements and advertisements published in national print publications (such as *Parade* and *US Weekly* magazines) to falsely advertise, offer for sale, sell and distribute Vysera-CLS.

10.    As part of their pervasive pattern of wrongful conduct, Defendants have utilized (and continue to utilize) the U.S. mail and interstate wire facilities, including telephones, facsimile machines and the internet to receive consumer solicitations to purchase Defendants' products, and Defendants' business activities have affected interstate commerce.

11.     Plaintiff brings this action on behalf of herself and all other similarly situated purchasers of Vysera-CLS for violations of (a) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (b) Utah's Pattern of Unlawful Activity Act ("UPUAA"), (c) the Magnuson Moss Warranty Act, (d) breach of express warranty, (e) the Utah Consumer Sales Practices Act, and (g) unjust enrichment.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the aggregate amount in controversy exceeds $5 million, exclusive of interest, fees, and costs.

14.     This Court has personal jurisdiction over Defendants because the corporate entity Defendants are each headquartered in this District and all Defendants regularly conduct business in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business throughout this District and a substantial part of the events, omissions and acts giving rise to the claims alleged occurred in this District.

## PARTIES

### Plaintiff

16.     Plaintiff, Adelaide Spence, is a resident and citizen of New York. On March 29,

2015, Plaintiff purchased a 30-day supply of Vysera-CLS from GNC for $84.99. Prior to her

purchase, Plaintiff carefully read and reviewed advertisements for Vysera-CLS on the internet,

which upon information and belief, were designed, sponsored and maintained by Defendants.

The internet advertisements represented that Vysera-CLS would cause a significant loss of body

fat and weight without diet and exercise. Plaintiff relied on the representations made in each of

the advertisements disseminated by Defendants and in the product description in deciding to

purchase Vysera-CLS, believing it to be an effective means to lose additional weight without diet

modification and exercise. Plaintiff would not have purchased Vysera-CLS had she known that

the product, in fact, was not effective and would not cause her to lose weight without modifying

her diet and without exercise. After taking Vyersa-CLS as directed on the product labeling,

Plaintiff did not lose any weight.

### Defendant Basic Research, LLC

17.     Defendant Basic Research, LLC ("Basic Research") is a limited liability company

organized and existing under the laws of the State of Utah with its principle place of business at

5742 Harold Gatty Drive, Salt Lake City, Utah.

18.     Basic Research claims to be one of the largest nutraceutical companies in the

United States with annual sales revenues in excess of $50 million. Basic Research develops,

manufactures, promotes, markets, distributes, and sells scores of cosmetics, nutritional

supplements, and dietary supplements (including Vysera-CLS) throughout New York and the United States using a web of limited liability companies formed by Defendants. Upon information and belief, Basic Research conducts business under, or is directly affiliated with, each of the limited liability companies, including Defendant Bremenn Research Labs, LLC, Dynakor Pharmacal, LLC, Carter-Reed Company, LLC, Zoller Laboratories, LLC, Voss Laboratories, LLC, Covarix, LLC, Covaxil Laboratories, LLC, Klein-Becker USA, LLC, NutraSport, LLC, Alpha Gen Biotech, LLC, Sovage Dermalogic Laboratories, LLC, Western Holdings, LLC, Body Innoventions, LLC, AG Waterhouse, LLC, and Ban, LLC, among many others. Defendants also do business or have done business under a variety of trade names, including Relacor®, Zantrex®, SeroVital®, StriVectin®, Hylexin®, Akavar®, Dynakor Pharmacal®, NutraSport, Silver Sage®, Klein-Becker USA®, Urban Biologics®,Tummy Tuck In A Box®, Butt Lift In A Box®, and Body Lab®.

19.     Basic Research, together with Defendants Gay and Friedlander, has a pattern and practice of creating a new limited liability company for each dietary supplement product it manufactures, advertises, or sells to consumers. Defendants Gay and Friedlander have a pattern and practice of using the "goodwill" of Basic Research to hold themselves, and their affiliated companies, out to the public as the "Basic Research Family of companies." In so doing, they make the same or similar false and misleading claims about the same or similar dietary supplement that is merely packaged under a different name and sold by a different entity.

20.     Under the direction of Defendants Gay and Friedlander, Basic Research's "Marketing Department" is responsible for the labeling, advertising, and media placement for

Vysera-CLS and other dietary supplements sold by Defendants throughout New York and the United States.

21.     Basic Research is the subject of a permanent injunction entered by the U.S. Federal Trade Commission that, among other things, proscribes the marketing and sale of alleged weight loss products unless competent and reliable scientific evidence supports the claims made about such products. *In the Matter of Basic Research, L.L.C., et al.*, FTC Docket No. 9318 (June 19, 2006) ("FTC Injunction").[3]

22.     On December 11, 2013, the National Advertising Division of the Council of Better Business Bureaus ("NAD") referred advertising claims for Vysera-CLS to the Federal Trade Commission (FTC) for further review due to the FTC's permanent injunction against Basic Research.

**Defendant Bremenn Research Labs, LLC**

23.     Defendant Bremenn Research Labs, LLC d/b/a Bremenn Clinical ("Bremenn") is a limited liability company organized and existing under the laws of the State of Utah. Bremenn maintains its principle place of business at the same address as Basic Research, 5742 Harold Gatty Drive, Salt Lake City, Utah. Bremenn is an affiliate of Basic Research created for the sole purpose of advertising, marketing and selling certain skincare and other products developed by the Defendants, including Vysera-CLS. Bremenn markets, advertises, and promotes Vysera-CLS under the explicit direction of Defendants throughout New York and the United States.

---

[3] Available at http://www.ftc.gov/os/adjpro/d9318/060619decisionandorder.pdf (last visited June 10, 2015).

**<u>Defendant Dennis W. Gay</u>**

24.     Defendant Dennis W. Gay ("Gay") is a resident of the State of Nevada. Gay was at relevant times an officer, principal shareholder, and CEO of Basic Research and Bremenn, among other Basic Research affiliated companies.

25.     Individually, or acting in concert with the other Defendants, Gay formulated, directed, controlled, or participated in the acts and  business practices alleged in this Complaint.

26.     As an officer and principal shareholder of Basic Research and Bremenn, Gay has at relevant times exercised final decision-making authority over work carried out in Basic Research's "Marketing Department" and has been personally responsible for the design, content, approval, distribution, and publication of all Vysera-CLS labeling and advertisements, including the specific advertisements viewed and relied upon by Plaintiff and Class members.

27.     Within the Defendants' business enterprise, at relevant times Gay was ultimately responsible for placing the advertisements for products, including Vysera-CLS, into the stream of commerce and for selling the products in interstate commerce.

28.     As a result of Gay's control over Basic Research and Bremenn, Basic Research and Bremenn acted for the benefit of Gay and with Gay's knowledge and consent such that Basic Research and Bremenn served as Gay's agents.

29.     Additionally, Gay has deliberately confused consumers as to the source of various products, including Vysera-CLS, that Defendants manufacture, market, advertise, promote, distribute, and sell. His intentional tortious acts and personal participation in the wrongful

conduct underlying this class action deprive him of any protection he might otherwise have for his personal liability through the web of corporate entities he has created.

30.     In connection with the manufacture, marketing, advertising, promotion, distribution, and sale of Vysera-CLS, Gay has exercised control over Basic Research and Bremenn such that these companies are his alter ego, a sham, a facade, and a mere instrumentality for his personal benefit, and he has disregarded and abused the corporate form and structure of these companies and others like Bydex Management, a staffing and operations company which shares a corporate headquarters with Basic Research and Bremenn and which purportedly provides staffing and accounting services for Basic Research.

31.     Gay has misused the corporate form of Basic Research, Bremenn and other companies to commit an intentional fraud upon the public, in an effort to defeat the ends of justice and otherwise evade the law, including with respect to the manufacture, marketing, advertisement, promotion, distribution and sale of Vysera-CLS.

32.     In addition, Gay has fraudulently created trademarks and the above-mentioned corporations in order to (i) evade detection of his true identity as the individual with dominion and control and (ii) defeat the ends of justice and otherwise evade the law, including with respect to the marketing, advertisement, promotion, distribution, and sale of Vysera-CLS.

33.     Gay is personally subject to the FTC Injunction described in Paragraph 54 of this Complaint. Gay's activities with regard to the manufacture, marketing, advertising, promotion, and sale of Vysera-CLS constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiff and Class members.

**Defendant Mitchell K. Friedlander**

34.     Defendant Friedlander is a resident of Florida. Friedlander is the self-described "marketing guru" of Basic Research and has been described as the "idea man" behind numerous advertising campaigns for dietary supplements carried out by Defendants and their affiliated companies. Although he is neither an employee of Basic Research or Bremenn, at relevant times Friedlander maintained his offices at the corporate headquarters of Basic Research at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

35.     Friedlander is a "marketing consultant" to Gay, Basic Research and Bremenn, among others, and is directly involved in the development, manufacture, endorsement, advertising, marketing, and promotion of Basic Research products, including Vysera-CLS. At relevant times, Friedlander had primary responsibility for the design, content, approval, distribution, and publication of Defendants' advertisements, including the Vysera-CLS advertisements viewed by Plaintiff.

36.     Despite his consultant role, Friedlander receives "royalty" payments from Basic Research for each sale of various products marketed by Basic Research pursuant to a 1993 royalty agreement and/or covenant not to sue between Friedlander and Basic Research.

37.     As a result of Friedlander's royalty agreement and control over Basic Research and Bremenn, Basic Research and Bremenn acted for the benefit of Friedlander and with Friedlander's knowledge and consent such that Basic Research and Bremenn served as Friedlander's agents.

38.     On September 10, 1985, the U.S. Postal Service ("USPS") issued "Cease and
Desist" and "False Representation" orders against Friedlander in connection with his activities
concerning the marketing and sale of weight-loss dietary supplements called "Intercal-SX,"
"Metabolite-2050," and "Anorex-CCK." These products were falsely advertised as (i) causing
weight loss in virtually all users, (ii) causing weight loss without willpower or caloric restricting
diets or exercise, (iii) preventing foods from being converted into stored fat, (iv) being supported
by scientifically sound clinical studies, and (v) allowing obese persons to lose weight while
continuing to eat all the food that such persons wanted. The USPS found reports cited by
Friedlander insufficient to support his "exaggerated claims." Accordingly, the USPS issued cease
and desist orders preventing Friedlander and his companies from continuing to make false claims
about the effectiveness of his weight loss products. *See In the Matter of the Complaint Against
W.G. Charles Company, Customer Service Distribution Center, Inc., Mitchell K. Friedlander,
Harris Friedlander, and Michael Meade*, U.S. Postal Service Docket No. 19/104 (Sept. 10,
1985) and *In the Matter of the Complaint Against The Robertson-Taylor Company, Intra-Medic
Formulations, Inc., Customer Service Distribution Center, Inc., Mitchell K. Friedlander, Harris
Friedlander, and Michael Meade*, U.S. Postal Service Docket No. 19/162 (Sept. 10, 1985).[4]

39.     On September 30, 1985, the USPS issued a second Postal Service Decision
concerning Friedlander. This time, the USPS found Friedlander's advertisements for three breast
enlargement products – Macrocell-D58 Liquid Concentrate, Mamralin-BX2, and Breast Formula

---

[4] Available at http://about.usps.com/who-we-are/judicial/admin-decisions/1985/19-104dd.htm,
last visited June 10, 2015.

XP-39 – were "materially false as a matter of fact." Contrary to Friedlander's advertisements, the USPS found that these products would not cause a woman's breasts to become larger. As with the weight loss products, the USPS ordered Friedlander to cease and desist from making further false claims about the effectiveness of his breast enlargement products. *See In the Matter of the Complaint Against The Robertson-Taylor Company, Intra-Medic Formulations, Inc., W.G Charles Company, Customer Service Distribution Center, Inc., J.F. Pharmaceuticals, Mitchell K. Friedlander, Harris Friedlander, and Michael Meade*, U.S. Postal Service Docket Nos. 19/105, 19/161, and 20/32 (Sept. 30, 1985).[5]

    *40.*    On February 26, 1986, following a six-day bench trial in an action brought by the Department of Justice and the FTC, the Southern District of Florida permanently enjoined Friedlander from advertising that his weight loss products caused weight loss without exercising or restricting caloric intake. *See FTC v. Intra-Medic Formulations, Inc., No. 85-2819-Civ-Nesbitt (S.D. Fla. Feb. 26, 1986).*

    41.    Friedlander is personally subject to the FTC Injunction referenced in Paragraph 54 of this Complaint. Friedlander's activities with regard to the marketing, advertising and sales of Vysera-CLS constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiff and Class members.

---

[5] Available at http://about.usps.com/who-we-are/judicial/admin-decisions/1985/19-105.htm, last visited June 10, 2015.

**Defendant Tiffany Strobel**

42.     Tiffany Strobel is a resident of Florida and is the purported "author, columnist and beauty editor" for the weight loss blog MyFreeDiet.com, which upon information and belief is owned and operated by Defendants.

43.     Strobel was directly involved in the endorsement and advertising of several products manufactured, distributed, marketed, advertised and sold by Basic Research, Gay and Friedlander, including Vysera-CLS.

44.     Strobel is attributed as the "author" of Defendants' print ads for Vysera-CLS that appear in several national magazines, as well as advertising content appearing on Defendants' website, www.vyseracls.com.

## STATEMENT OF FACTS

### A.  History of Defendants' Enterprises

45.     Defendants are all well-experienced in the promotion, marketing, and sale of alleged weight-loss products through false and deceptive advertising. As alleged herein, Defendants Gay and Friedlander are each the subject of the FTC Injunction. These Defendants' activities with regard to the marketing, advertising, and sales of Vysera-CLS during the class period constitute a violation of the FTC injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiff and class members. As a result, every act each of the Defendants undertook, or caused the other Defendants to undertake, to market, advertise, and sell Vysera-CLS was part of a scheme or artifice to defraud Plaintiff and class members.

46.     At the center of Defendants' interrelated business enterprises lies Basic Research, which was created to capitalize on the U.S. obesity and overweight epidemic and resulting interest in weight-loss products. Basic Research develops, manufactures, distributes, markets, advertises, and sells scores of products, which are marketed under the names of a litany of companies in an effort to confuse competitors and consumers by creating a convoluted and complex web of organizations.

47.     Defendant Gay, as a principal of Defendant Basic Research and all affiliated companies created by the Defendants for the sole purpose of illegally marketing weight loss products, is responsible for, among other things, the oversight and conduct of the Defendants' illegal corporate enterprise.

48.     Defendant Friedlander, who is the self-proclaimed "marketing guru" behind the Defendants' business enterprises and products, has a long history of unlawful activity involving the marketing, advertising, promotion and sale of alleged weight-loss products. Despite his record of wrongdoing and violations of federal and state laws, Friedlander remains responsible for, among other things, developing the marketing and advertising "platform" for the dietary supplements.

**B.   Defendants' Pattern and Practice of Illegal Marketing and Advertising**

49.     Defendants have a long history of using the U.S. mails, interstate wire facilities (including Internet websites and television commercials), print advertising (including newspapers and magazines), and point-of-purchase advertising displays, in order to fraudulently misrepresent and illegally market weight-loss products. Defendants' "track record" of

disseminating false and misleading advertisements for dietary supplement products is relevant to show their scheme or artifice to defraud Plaintiff and Class members in this case, and is relevant to demonstrate that Defendants have knowingly engaged in a "pattern of racketeering activity" in violation of Federal and Utah anti-racketeering statutes.

50.     Defendants previously have caused advertisements for the following weight loss products to be sent through the U.S. mail and interstate wire facilities, published in national magazines:

a.     *Zotrin.* Defendants marketed and sold "Zotrin" as a "European 'Miracle Pill'" that "Restricts caloric intake automatically," and that "you cannot fail … because you don't have to do anything more than remember to take your easy-to-swallow Zotrin," and that "Published Clinical Studies Prove 100% Success."

b.     *Automatic Weight Loss Compound.* Defendants marketed and sold "Automatic Weight Loss Compound" as a "European Breakthrough" that "Reduces Caloric Intake Automatically" and that you "lose weight … without dieting'" and that "Groundbreaking Study Proves 100% Success."

c.     *Anorex.* Anorex was one of the products at issue in the enforcement proceeding that resulted in the FTC Injunction (as alleged in Paragraph 54) involving Defendants Gay and Friedlander. Defendants marketed and sold Anorex as a weight loss product that was "clinically established" and specifically designed to "overcome your genetic predisposition" to be overweight.

d.      *PediaLean*. PediaLean was also one of the products at issue in the enforcement proceedings that resulted in the FTC injunction. Defendants marketed and sold Anorex as a weight loss product for children that was "clinically proven" and represented that "each and every child who used PediaLean as directed lost a significant amount of excess body weight … a success rate of 100%".

e.      *Zantrex*. Defendants marketed and sold products under the trade name Zantrex (Zantrex-3, Zantrex-3 High Energy Fat Burner, and Zantrex-3 Power Crystals). Zantrex-3's labeling and advertising represented it to be a "Super Pill" that is safe and effective for "Rapid Weight Loss" and will deliver "546% more weight loss than the leading ephedra-based diet pill." The Power Crystal's labeling and advertising represented that it was safe and effective for "Rapid Weight Loss" and "Reduced Appetite." And Fat Burner's labeling and advertising represented that it is a "Fat Burner" that is safe and effective for "Rapid Fat Loss."

f.      *Topical Gels*. Defendants also marketed a variety of topically-applied gels which they falsely claimed to be "patented spot reducing gels" that "emulsified fat on contact," which were the "first clinically proven anorectic agents developed specifically for" "pear-shaped women," "apple-shaped women," and to "reduce tummy fat." Defendants' false and misleading advertisements advised that consumers should not rub too much of the gel on the body at the same time because there was no way for the body to utilize the fat released from the topically applied gel.

51.     Each of the Defendants' advertising statements for the above-referenced weight loss products was false and misleading. Neither Zotrin nor Automatic Weight Loss Compound

were from Europe, but instead, contrived and developed by Defendants in their Utah facility. Defendants' other claims were not supported by clinical studies because none of those products were clinically tested before being sold to the consuming public.

52.    Defendants and the dietary supplement industry have been the source of controversy for years, often coming under fire for ineffective products and false and misleading advertisements. For example, on June 16, 2004, during a House Hearing on the Health Concerns About Dietary Supplements For Overweight Children (the "2004 House Hearing"), Congressman James C. Greenwood, Chairman of the Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce, upon hearing testimony from Gay, correctly labeled the Basic Research Defendants as "scam artists:"

> This is the assessment then, the conclusion that I am coming to from what I have heard so far. And that is that any scam artists or group of scam artists who wants to get rich quick, preying on the emotional pain of people suffering weight loss can go to a phony laboratory, give a screwball list of ingredients that are not proven to do a darn thing, put it in a pill, put the pill in a bottle, put the bottle in a box and make a mint. That is my conclusion from what I have heard today.[6]

53.    In fact, on June 16, 2004, the same day as the House Hearing, the FTC brought a complaint (the "FTC Complaint") against, among others, Defendants Basic Research, Gay and Friedlander for claims they made in their marketing of six weight loss products.[7]  Three of the

---

[6] *Parents Be Aware: Health Concerns About Dietary Supplements For Overweight Children Before the Subcomm. On Oversight and Investigations of the H. Comm. On Energy and Commerce*, 108th Cong. (2004), available at http://www.gpo.gov/fdsys/pkg/CHRG-108hhrg95442/html/CHRG-108hhrg95442.htm, last visited June 10, 2015.
[7] Complaint, *In re Basic Research*, F.T.C. Docket. No. 9318 (2006), available at http://www.ftc.gov/os/adjpro/d9318/0023300part3cmp040616.pdf, last visited June 10, 2015.

products – Tummy Flattening Gel, Cutting Gel, and Dermalin APg – were skin gels that claimed to melt away fat wherever applied, including a user's thighs, tummy, or a double chin. Two of the products – Leptoprin and Anorex – were ephedrine-based diet pills that claimed to cause weight loss of more than 20 pounds. The final product was PediaLean – fiber pills marketed for overweight children that claimed to cause substantial weight loss. The FTC alleged that the defendants (i) neither possessed nor relied on a reasonable basis that substantiated these claims, (ii) falsely claimed that clinical testing proved those claims for four of the challenged products, and (iii) misrepresented their spokesperson as a medical doctor.

54.     On June 19, 2006, the FTC issued the FTC Injunction as a result of the FTC Complaint against Basic Research, Gay and Friedlander.[8]  Basic Research was ordered to pay $3 million settlement on behalf of all respondents. Additionally, the FTC Injunction prohibited Basic Research, Gay and Friedlander from making unsubstantiated claims. Specifically, the FTC Injunction prohibited them, "directly or through any corporation, subsidiary, division, or other device" from:

A. [R]epresent[ing], in any manner, expressly or by implication, including through the use of the names "Cutting Gel," "Tummy Flattening Gel," "Anorex" and "PediaLean," or other trade names, or through the use of endorsements, that such product causes weight or fat loss, unless at the time the representation is made, respondents possess and rely upon a reasonable basis for the representation, which shall consist of competent and reliable scientific evidence;

B. [M]ak[ing] any representation, in any manner, expressly or by implication, including through the use of trade names or endorsements, about the effect of such food, drug or dietary supplement on any disease, or about the effect of such food, drug or dietary

---

[8] Decision And Order, *In re Basic Research, L.L.C.*, Dkt. No. 9318 (2006), available at http://www.ftc.gov/os/adjpro/d9318/060619decisionandorder.pdf, last visited June 10, 2015.

supplement on the structure or function of the human body or other health benefits or weight loss benefits, unless at the time the representation is made respondents possess and rely upon a reasonable basis for the representation, which shall consist of competent and reliable scientific evidence; (emphasis added)

C. [M]isrepresent[ing], in any manner, expressly or by implication, including through the use of endorsements or trade names, the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; (emphasis added).

### C. Defendants' False and Misleading Advertising of Vysera-CLS

55.     As they had done many times over the past twenty years or more, Defendants created Vysera-CLS as a means of fraudulently capitalizing on America's obesity and overweight epidemic and resulting interest in weight-loss products.

56.     Acting in concert with Defendants Gay, Basic Research and Bremenn, Friedlander developed the marketing and advertising campaign for Vysera-CLS.

57.     On March 1, 2013, the U.S. Patent and Trademark office ("USPTO") listed an application for the trademark Bremenn Research Labs by Bremenn IP Holdings, LLC, an affiliate of Defendants that was acting on behalf of Defendants, in order to give the impression that a real "laboratory" stood behind the bogus product. On March 14, 2013, the USPTO listed an application for the trademark "Vysera" by Quality IP Holdings, LLC, another affiliate of Defendants that was acting on behalf of Defendants. Starting on or about this date, Defendants began marketing Vysera-CLS to Plaintiff and Class members throughout Utah, New York and the United States. Sales of Vysera-CLS to consumers continue to date.

58.     Vyersa-CLS is sold at select major retailers both in-store and online, including Ulta, Kohl's, GNC, and Boscov's, as well as at various other online retailers. It also can be

purchased directly from Defendants by calling a toll-free number or through Defendants'

websites, VyseraCLS.com and BremennClinical.com.

59.     A 30-day supply of Vysera-CLS cost approximately $99.00. Defendants also

promote a "Preferred Customer Plan" – an auto-bill plan that customers can enroll in so that

"[f]uture orders of Vysera-CLS will be automatically billed and shipped every 30 days for just

$79.20 including shipping and handling!"

60.     Defendants' marketing of Vysera-CLS have caused the same, or substantially the

same, false and misleading advertisements for Vysera-CLS to be published in national

magazines, displayed in retail stores across the county ("point of purchase"), circulated through a

series of press releases, published on the Internet, and posted on social media. Copies of certain

print and internet advertisements disseminated by Defendants are attached here to as Exhibits A-

E.

61.     Under the direction of Basic Research, Gay and Friedlander, the advertisements

were written by Defendant Strobel and appeared in various national magazines, including *US

Weekly*, *Parade* and *OK! Magazine*, as well as on Defendants' website, www.VyserCLS.com

and Defendants' Facebook pages, https://www.facebook.com/Vysera and

https://www.facebook.com/BremennLabs.

62.     The core of Defendants' fraudulent representations consists of statements that tout

Vysera-CLS as a "miracle pill" that will cause a significant loss of weight and fat from those

hard-to-reach areas of your body, such as the hips, thighs, waist and butt, without diet and

exercise, including the following:

… groundbreaking research has just identified a compound that can not only help you lose weight, but can actually reshape your entire body, reducing waist size, hip size, thigh and buttock circumference, belly bulge, and … last but not least … cause a significant loss of actual fat mass from all over your body.

\*\*\*

… unlike your run-of-the-mill "diet pill" that merely helps you lose weight (while following a strict low-calorie diet), Vysera can actually reshape your entire body … dropping inch upon inch of unsightly fat from your waist, hips, thighs and tummy … *even if you're eating more than 2,000 calories a day*!

\*\*\*

People who took this incredible compound not only lost weight, but lost a significant amount of squishy, flabby, unattractive body fat from those hard-to-target places we all hate: our hips, thighs and butt. It also caused a significant reduction in the amount of fat around the waist (yes, that means you can start saying goodbye to your love handles), helping study subjects achieve that tight, sexy, firm figure we all dream of. And the best part? The compound did all this on 2,000 to 2,200 calories a day! In other words, *without requiring anybody to follow a low-calorie diet or work out for hours every day!* (emphasis added)

63.    Defendants further falsely represent and mislead consumers into believing that Vysera-CLS works by blocking the absorption of calories by describing Vysera-CLS as the "Cupcake Diet" and comparing Vysera to eating a donut or cupcake: "It's sort of like eating a [whole donut / entire cupcake], but only absorbing a fraction of the calories…."

64.    Defendants also falsely represent that the claims are backed by science making a vague reference to "serious clinical research published in the highly-respected *British Journal of Nutrition*." However, the study Defendants describe in their advertising and promotional materials was never published in the *British Journal of Nutrition*.

22

65.     Defendants website, www.Bremennclinical.com, contains similar content with the same core message:

> Vysera-CLS doesn't just help you get trimmer… it actually works to "reshape" your entire body. This incredible formula can help you get tighter, leaner, and firmer… without making you starve or spend hours working out. In fact, in the clinical trial on Vysera's key compound, study subjects lost both weight and body fat*, even though they were eating 2,000-2,200 calorie a day. A recent writeup on Vysera explained it like this: "Think of it this way… it's sort of like eating a whole donut, but only absorbing a fraction of the calories. How's that for amazing?"

66.     Defendants also heavily promote Vysera-CLS through press releases that contain substantially the same content as their other ads but with titles to mislead readers into believing that Vysera-CLS was approved by the scientific and medical communities and was selling out at retail stores. These press releases include the following:

- "A Pill That Can Reshape Your Entire Body in 30 Days? Researchers Buzzing Over Science Behind Bremenn Clinical's™ Vysera™-CLS" (July 24, 2013);

- "Has Groundbreaking Research Identified 'Body Reshaping' Compound? Clinical Trial Shows Compound Not Only Helped Study Subjects Lose Weight, but Drop Actual Body Fat from Hips, Waist, Thighs, and Butt" (September 24, 2013);

- "Revolutionary New 'Body-Reshaping' Compound Breaking Records at Luxury Beauty Store" (October 1, 2013);

- "'Body Reshaping' Fat Burner Draws Crowds at Lifestyle Medicine Conference Can a 'Diet Pill' Really Reshape Your Entire Body in 30 Days? Groundbreaking Research Shows Formula Not Only Helped Study Subjects Lose Weight, but Drop Actual Body Fat from Hips, Waist, Thighs, and Butt, Says Bremenn Clinical™" (November 8, 2013);

- "Can You Reshape Your Entire Body in 30 Days with a Calorie-Blocking Compound? Experts at Preeminent Obesity Treatment Conference Intrigued by Revolutionary Vysera™-CLS Formulation" (November 20, 2013);

- "Vysera 'Anti-Fat' Pill Wows Experts At Scientific Meeting In San Diego" (May 1, 2014);

- "Experts at Renowned Gynecology Conference Learn about New Weapon in the War on Fat, Ob/Gyns -- Often on Front Lines When It Comes to Women and Weight Loss -- Intrigued by 'Body-Reshaping' Formula Vysera™-CLS" (May 8, 2014); and

- "Time Magazine's 'Eat Butter' Cover and Celebrities Losing Weight on High-Fat, High-Protein Diets Push Sales of Weight-Loss Compound Vysera®-CLS Through the Roof (June 25, 2014).

67.     Defendants similarly promote Vysera-CLS (among Defendants' other dietary supplements) on the diet blog, www.MyFreeDiet.com, as a "Calorie Blocker":

> If you haven't heard about Vysera-CLS yet... you definitely will... and very, very soon. Why? Because groundbreaking new research has revealed that this Calorie Blocker contains a compound that can not only help you lose weight, but can actually reshape your entire body, reducing waist size, hip size, thigh and buttock circumference, belly bulge, and... last but not least... cause a significant loss of actual fat mass from all over your body. Has the "miracle Calorie-Blocking pill" finally arrived? As one article said, taking Vysera is sort of like "eating a whole donut and only absorbing a fraction of the calories." How's that for amazing? (Of course, we don't advocate eating a donut as a meal, and this example is used for illustrative purposes only.) Vysera-CLS will be available at GNC and Kohl's in mid-January. It's also available direct from the manufacturer at VyseraCLS.com or call 1-800-901-6607.[9]

68.     The above-referenced advertising claims – claims that are common to all Vysera-CLS advertisements, whether they are disseminated by U.S. mail or interstate wire facilities (including via the Internet) – are false, misleading, deceptive and inaccurate. Each of the

---

[9] http://www.myfreediet.com/eablog/?p=599, last visited June 10, 2015.

Defendants knew at the time of dissemination that the above-referenced advertising claims were false, misleading, deceptive and inaccurate.

69.     On November 19, 2002, FTC staff conducted a public workshop in an effort to curb deceptive advertising of weight-loss products and services. The workshop included a science panel, comprised of ten experts in nutrition and the study and treatment of overweight and obesity that evaluated the scientific feasibility of certain weight-loss claims, like the ones Defendants make for Vysera-CLS, including whether a weight loss product can cause (a) substantial weight loss without diet or exercise, (b) substantial weight loss through the blockage of absorption of fat or calories; and (c) weight loss from only those parts of the body where they wish to lose weight.[10]

70.     According to the FTC's panel of experts, the only way a product could cause weight loss without diet and exercise is to cause the malabsorption of calories, as Defendants claim Vysera-CLS does, or increase metabolism.[11]  One expert explained:

> And in terms of calories, to lose one pound a week, it would take malabsorption of about 500 calories a day or about 55 grams of fat. To lose two pounds a week, it would take malabsorption of about 1,000 calories or about 110 grams of fat. And to lose two pounds daily, it would take malabsorption of more than 7,000 calories and that would be about 750 grams of fat daily.[12]

---

[10] FTC Staff Report, "Deception in Weight-Loss Advertising Workshop: Seizing Opportunities and Building Partnerships to Stop Weight-Loss Fraud" (December 2003), at 1-3 .
[11] *Id*. at 6.
[12] *Id*. at 10.

On this basis, one would have to malabsorb 3,500 calories each week to lose just one pound and 7,000 calories each week to lose two pounds. However, the experts opined that the number of calories that can be malabsorbed in one week is limited to 1200 to 1300 calories, or roughly one-third of a pound per week.[13]

71.     Accordingly, the Panel unanimously opined that current scientific knowledge demonstrates that substantial weight loss through malabsorption of calories alone without diet and exercise, as Defendants claim Vysera-CLS does, is not scientifically feasible.[14]

72.     FTC staff agreed with the Panel's conclusions. Based on the Panel's discussions, written comments submitted to FTC staff before and after the workshop, the published scientific and medical literature, and the investigative experience of the FTC staff, the FTC concluded that the following weight-loss claims, like those made by Defendants for Vysera-CLS, are not scientifically feasible and thus are false and misleading:

- Consumers who use the advertised product can lose two pounds or more per week (over four or more weeks) without reducing caloric intake and/or increasing their physical activity;

- The advertised product will cause substantial weight loss through the blockage of absorption of fat or calories; and

- Consumers who use the advertised product can lose weight from only those parts of the body where they wish to lose weight.[15]

---

[13] *Id*. at 6.
[14] Dec. 2003 FTC Staff Report at 6, 11.
[15] *Id*. at 31.

73.     On January 7, 2014, the FTC issued its *Gut Check: A Reference Guide for Media on Spotting False Weight* Loss *Claims*, in which the FTC reaffirmed that "scientists have established that there are some [weight loss] statements that simply can't be true," including those it determined to be false and misleading during its November 2002 workshop.[16]

74.     Furthermore, contrary to Defendants' advertising claims, Vysera-CLS is not backed by "groundbreaking research". In fact, the "clinical trial" described in Defendants' Vysera-CLS advertisements has never been published in the *British Journal of Nutrition*.  To be clear, Plaintiff is not alleging that Defendants lack substantiation for their claims; rather Plaintiff is alleging these claims are simply false.

75.     Although Defendants do not identify in their advertisements the "compound" or active ingredient in Vysera-CLS that allegedly causes the claimed weight and fat loss, Defendants list "*Phaseolus compressus DC* (bean) Extract" as one of Vysera-CLS's "proprietary weight control component[s]." *Phaseolus compressus DC* is another name for *Phaseolus vulgaris* ("*P. vulgaris*"), or quite simply, the common bean.

76.     Contrary to Defendants' "groundbreaking research" claims, clinical studies that evaluated the efficacy of *P. vulgaris* on weight and fat loss have long established that starch blockers, such as *P. vulgaris* do not block the absorption of calories, or otherwise were determined to be inconclusive, thus rendering Defendants' claims to the contrary to be false.

---

[16] Available at https://www.ftc.gov/tips-advice/business-center/guidance/gut-check-reference-guide-media-spotting-false-weight-loss, last visited June 10, 2015.

77.     For example, a 1982 study published in the *New England Journal of Medicine* measured the excretion of fecal calories after normal subjects had taken either placebo or starch-blocker tablets. Researchers found that the fecal calorie excretion was the same in both groups. The study concluded that starch-blocker tablets do not inhibit the digestion and absorption of starch calories in human beings. George W. Bo-Linn, M.D., Carol A. Santa Ana, B.S., Stephen G. Morawski, B.A., and John S. Fordtran, M.D., *Starch Blockers – Their Effect on Calorie Absorption from a High-Starch Meal,"* N. ENGL. J. MED. 1982, 307:1413-1416 (Dec. 2, 1982).

78.     A 2004 study assessed the effects of a white bean extract on weight reduction in a 3-month period using a controlled, double blind, randomized design in two groups of obese women (10 experimental and 12 control subjects) during a reduced energy diet. The study found no significant differences for fat lost and concluded that the use of [starch blockers] is not justified in obesity prevention and treatment. Diaz, B., Erik; Aguirre P., Carolina, and Gotteland R., Martín. *Effect of α-Amylase Inhibitor On Body Weight Reduction in Obese Women*, REV. CHIL. NUTR. [online]. 2004, vol.31, n.3, pp. 306-317.

79.     More recently, a 2011 meta-analysis, which observed that the efficacy of weight loss supplements containing *P. vulgaris* has not been proven, evaluated six randomized clinical trials on *P. vulgaris* and concluded that "evidence from [randomized clinical trials] is not adequate enough to conclusively determine the effects of *P. vulgaris* supplementation on body weight." Onakpoya, I., Aldaaas, S., Rohini, T., & Ernst, E., (2011), The efficacy of *Phaseolus vulgaris* as a weight-loss supplement: a systematic review and meta-analysis of randomized

clinical trials, *Br J Nutr*; 106, 196-202.  Thus, Defendants' statement that its product is "supported" by groundbreaking research is false.

80.     Similarly, a 2014 European Food Safety Authority ("EFSA") analysis evaluated the clinical support for claims that the weight-loss supplement, PhaseLite™, which like Vysera-CLS, contains *P. vulgaris* extract, "helps to reduce body weight." The EFSA evaluated four human clinical studies that investigated the effects of *P. vulgaris* on body weight. The Panel concluded that the studies provided were "insufficient to establish a cause and effect relationship between the consumption of the standardized aqueous extract from white kidney bean (*Phaseolus vulgaris* L.) and reduction of body weight." EFSA (2014), Scientific Opinion on the substantiation of a health claim related to standardized aqueous extract from white kidney bean (*Phaseolus vulgaris* L.) and reduction of body weight pursuant to Article 13(5) of Regulation (EC) No 1924/2006, *EFSA J*; 12(7):3754.

## CLASS ALLEGATIONS

81.     Plaintiff brings this action as a class action on behalf of herself and the following Class:

> All persons in the United States who purchased, for consumption and not for resale or assignment, Vysera-CLS.

> Excluded from the Class are Defendants, their directors, officers, employees and immediate family members in addition to any person claiming damages for persona injury.

82.     The Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

29

83.     The members of the Class are so numerous that joinder of all members is impracticable.  Although the precise number of members in the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated that the Class consists of at least thousands of members.

84.     Plaintiff is a purchaser of Vysera-CLS and has been subjected to Defendants' deceptive and misleading course of conduct, which tricked, misled, and significantly confused consumers.  Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff and all other Class Members was and is caused by the same misconduct by Defendants.

85.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have any interest antagonistic to, or in conflict with, the Class.  Plaintiff has retained competent counsel, who are experienced in consumer and commercial class action litigation, to further ensure such protection and who intend to prosecute this action vigorously.

86.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein.  If class treatment of these claims were not available, Defendants would likely continue their wrongful conduct, would unjustly retain improperly obtained revenues, and/or would otherwise escape liability for their wrongdoing as asserted herein.

87.     Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class Members.  Among the questions of law and fact common to the Class are the following:

  a. whether Defendants uniformly marketed and sold Vysera-CLS as a proven weight loss product with a core message;

  b. whether Defendants' uniform marketing and sales practices were unlawful, deceptive, fraudulent, false, and/or misleading;

  c. whether Defendants' acts and omissions violated RICO and the UPUAA;

  d. whether Defendants violated the UCSPA;

  e. whether Defendants violated the Magnuson Moss Act;

  f. whether Defendants breached an express warranty;

  g. whether Defendants received a benefit from Plaintiff and Class Members and whether it would be unjust for Defendants to retain such benefits; and

  h. the appropriate measure of damages or other relief to which Plaintiff and the Class Members are entitled.

88.     Information relating to Vysera-CLS sales is available from Defendants' books and records, including, but not limited to, data associated with the Preferred Customer Plan.

89.     Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

90.     The prosecution of separate actions by individual Class Members would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of

conduct for Defendants.  Prosecution as a class action will eliminate the possibility of repetitious

litigation.

91.     Defendants have acted or refused to act on grounds generally applicable to the

Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violation of Section 1962(c) and (d) of RICO**
**(against Defendants Gay and Friedlander)**

92.     Plaintiff incorporates by reference and reasserts each of the foregoing allegations

herein.

93.     Defendants Gay and Friedlander, and each of them, was a "person," as that term

is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

94.     Defendant Basic Research was an "enterprise" as that term is defined in Section

1961(4) of RICO, 18 U.S.C. § 1961(4), engaged in or affecting trade or commerce. In the

alternative, Defendant Bremenn was an "enterprise," as that term is defined in Section 1961(4) of

RICO, 18 U.S.C. § 1961(4), engaged in or affecting trade or commerce.

95.     Defendants Gay and Friedlander, and each of them, did willfully and with the

purpose to defraud consumers, engage in fraudulent conduct, including acts constituting (a) mail

fraud, in violation of 18 U.S.C. § 1341; (b) wire fraud, in violation of 18 U.S.C. § 1343; and (c)

interstate transportation of money taken by fraud, in violation of 18 U.S.C. § 2314 by engaging

in the following acts:

a.     Fraudulently representing that consumers will lose a significant amount of weight and fat without diet and exercise simply by taking Vyersa-CLS;

b.     Fraudulently representing that Vysera-CLS causes the loss of a significant amount of fat from specific areas of the body, such as the hips, thighs, and butt, without diet and exercise;

c.     Fraudulently representing that Vysera-CLS causes significant loss of weight and fat by blocking the absorption of calories;

d.     Fraudulently representing that Vysera-CLS is supported by "groundbreaking" and "serious" clinical research when it is not;

96.     As a result of the foregoing fraudulent activities, Defendants have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiff and the members of the Class. Defendants' fraudulent conduct, as described above, constitutes a scheme or artifice to defraud Plaintiff and Class members.

97.     In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed letters, marketing and sales materials, advertisements, agreements and other matters in depositories and by removing or causing to be removed letters and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341.

98.     In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or

in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343. Defendants' use of interstate wire facilities included advertising Vysera-CLS through Internet postings, as well as interstate telephone calls from Class members who were seeking to purchase the product and/or complain about its non-performance.

99.     In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, transported, transmitted, or transferred in interstate commerce money, of the value of $5,000 or more, representing the proceeds of sales of Vysera-CLS to consumers, knowing the same to have been taken by fraud from Plaintiff and Class members.

100.    Each of the numerous mailings, interstate wire communications and interstate transportations that were made in furtherance of Defendants' scheme to defraud Plaintiff and Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

101.    The fraudulent and deceptive activities engaged in by Defendants Gay and Friedlander, and each of them, in marketing Vysera-CLS to Plaintiff and Class members involve and affect interstate commerce. As alleged in this Complaint, Defendants Gay and Friedlander have caused their affiliated entities to market, sell and deliver Vysera-CLS throughout the United States.

102.   By committing such offenses, which victimized Plaintiff and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants Gay and Friedlander, and each of them, have engaged in a "pattern of racketeering activity," as that term is defined in Section 1961(5) of RICO, 18 U.S.C. § 1961(5).

103.   Defendants Gay and Friedlander, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," as defined in § 98; namely, Basic Research, or, in the alternative, Bremenn, through a pattern of racketeering activity, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

104.   Defendants Gay and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," as identified in § 98; namely Basic Research, or in the alternative, Bremenn, through a pattern of racketeering activity, in violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d).

105.   Plaintiff and Class members who purchased Vysera-CLS have been injured in their business or property and, therefore, have standing to sue Defendants Gay and Friedlander and recover treble damages and the costs of bringing this class action under Section 1962(c) of RICO, 18 U.S.C § 1964(c).

106.   By virtue of their violations of Section 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d), Defendants Gay and Friedlander, and each of them, are jointly and severally liable to Plaintiff and Class members for three times the damages that Plaintiff and Class members suffered as a result of Defendants' scheme to defraud.

**SECOND CAUSE OF ACTION**
**For violations of Section 1962(c) and (d) of RICO**
**(against Defendants Basic Research, Bremenn, Gay and Friedlander)**

107.    Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

108.    Defendants Basic Research, Bremenn, Gay and Friedlander, and each of them, was a "person," as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

109.    Defendants Basic Research, Bremenn, Gay and Friedlander constituted an association-in-fact "enterprise" as that term is defined in Section 1961(4) of RICO, 18 U.S.C. § 1961(4).

110.    Defendants Basic Research, Bremenn, Gay and Friedlander, and each of them, did willfully and with the purpose to defraud consumers, engage in fraudulent conduct, including acts constituting (a) mail fraud, in violation of 18 U.S.C. § 1341; (b) wire fraud, in violation of 18 U.S.C. § 1343; and (c) interstate transportation of money taken by fraud, in violation of 18 U.S.C. § 2314 by engaging in the following acts:

a.    Fraudulently representing that consumers will lose a significant amount of weight and fat without diet and exercise simply by taking Vyersa-CLS;

b.    Fraudulently representing that Vysera-CLS causes the loss of a significant amount of fat from specific areas of the body, such as the hips, thighs, and butt, without diet and exercise;

c.    Fraudulently representing that Vysera-CLS causes significant loss of weight and fat by blocking the absorption of calories;

      d.     Fraudulently representing that Vysera-CLS is supported by "groundbreaking" and "serious" clinical research when it is not;

111.    As a result of the foregoing fraudulent activities, Defendants have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiff and members of the Class. Defendants' fraudulent conduct, as described above, constitutes a scheme or artifice to defraud Plaintiff and Class members.

112.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed letters, marketing and sales materials, advertisements, agreements and other matters in depositories and by removing or causing to be removed letters and other mailable matters form depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341.

113.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the Federal wire fraud statute, 18 U.S.C. § 1343. Defendants' use of interstate wire facilities included advertising Vysera-CLS through Internet postings, as well as interstate telephone calls from Class members who were seeking to purchase the product and/or complain about its non-performance.

114.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, transported, transmitted, or transferred in interstate commerce money, of the value of $5,000 or more, representing the proceeds of sales of Vysera-CLS to consumers, knowing the same to have been taken by fraud from Plaintiff and Class members.

115.    Each of the numerous mailings, interstate wire communications and interstate transportations that were made in furtherance of Defendants' scheme to defraud Plaintiff and Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

116.    The fraudulent and deceptive activities engaged in by Defendants Basic Research, Bremenn, Gay and Friedlander, and each of them, in marketing Vysera-CLS to Plaintiff and Class members involve and affect interstate commerce. As alleged in this Complaint, Defendants Basic Research, Bremenn, Gay and Friedlander market, sell and deliver Vysera-CLS throughout the United States.

117.    By committing such offenses, which victimized Plaintiff and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants, and each of them, have engaged in a "pattern of racketeering activity," as that term is defined in Section 1961(5) of RICO, 18 U.S.C. § 1961(5).

118.    Defendants Gay and Friedlander, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," namely,

the association-in-fact identified in Paragraph 109, through a pattern of racketeering activity, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

119.    Defendants Basic Research, Bremenn, Gay and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," namely, the association-in-fact identified in Paragraph 109, through a pattern of racketeering activity, in violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d).

120.    Plaintiff and Class members who purchased Vysera-CLS have been injured in their business or property and, therefore, have standing to sue Defendants Basic Research, Bremenn, Gay and Friedlander and recover treble damages and the costs of bringing this class action under Section 1964(c) of RICO, 18 U.S.C § 1964(c).

121.    By virtue of their violations of Section 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d), Defendants Basic Research, Bremenn, Gay and Friedlander, and each of them, are jointly and severally liable to Plaintiff and Class members for three times the damages that Plaintiff and Class members suffered as a result of Defendants' scheme to defraud.

**THIRD CAUSE OF ACTION**
**For violations of Section 76-10-1603(3) and (4) of UPUAA**
**(against Defendants Gay and Friedlander)**

122.    Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

123.    Defendants Gay and Friedlander, and each of them, was a "person," as that term is defined in Section 76-10-1602(3) of UPUAA, Utah Code Ann. § 76-10-1602(3).

124.     Defendant Basic Research, was an "enterprise," as that term is defined in Section 76-10-1602(1) of UPUAA, Utah Code Ann. § 76-10-1602(1). In the alternative, Defendant Bremenn was an "enterprise," as that term is defined in Section 76-10-1602(1) of UPUAA, Utah Code Ann. § 76-10-1602(1).

125.     Defendants Gay and Friedlander, and each of them, engaged in acts constituting mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and interstate transportation, transmittals, or transfers of money taken by fraud, in violation of 18 U.S.C. § 2314. Each of the numerous mailings, communications and transportations, transmittals, or transfers using interstate facilities that were made in furtherance of Defendants' scheme to defraud Plaintiff and Class members constitute separate and distinct acts of "unlawful activity," as that term is defined in Section 76-10-1602(4)(g) of UPUAA, Utah Code Ann. § 76-10-1602(4)(g).

126.     The fraudulent and deceptive activities engaged in by Defendants Gay and Friedlander, and each of them, in marketing Vysera-CLS to Plaintiff and Class members involve and affect interstate commerce. As alleged in this Complaint, Defendants Gay and Friedlander market, sell and deliver Vysera-CLS throughout the United States.

127.     By committing such offenses, which victimized Plaintiff and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants, and each of them, have engaged in a "pattern of unlawful activity," as that term is defined in Section 76-10-1602(2) of UPUAA, Utah Code Ann. § 76-10-1602(2).

128.     Defendants Gay and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," namely, Basic Research, or, in the alternative, Bremenn, through a pattern of racketeering activity, in violation of Section 76-10-1603(4) of UPUAA, Utah Code Ann. § 76-10-1603(4).

129.     Plaintiff and Class members who purchased Vysera-CLS have been injured in their person or property and, therefore, have standing to sue Defendants Gay and Friedlander under Section 76-10-1605(1) of UPUAA, Utah Code Ann. § 76-10-1605(1).

130.     By virtue of their violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann. § 76-10-1603(3) and (4), Defendants Gay and Friedlander, and each of them, are jointly and severally liable to Plaintiff and Class members for two times the damages that Plaintiff and Class members suffered as a result of Defendants' scheme to defraud.

### FOURTH CAUSE OF ACTION
#### For violations of Section 76-10-1602(3) and (4) of UPUAA
#### (against Defendants Basic Research, Bremenn, Gay, and Friedlander)

131.     Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

132.     Defendants Basic Research, Bremenn, Gay, and Friedlander,  and each of them, was a "person," as that term is defined in Section 76-10-1602(3) of UPUAA, Utah Code Ann. § 76-10-1602(3).

133.     Defendants Basic Research, Bremenn, Gay, and Friedlander constituted an association-in-fact "enterprise," as that term is defined in Section 76-10-1602(1) of UPUAA, Utah Code Ann. § 76-10-1602(1).

134.    Defendants Basic Research, Bremenn, Gay, and Friedlander, and each of them, engaged in acts constituting mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and interstate transportation, transmittals, or transfers of money taken by fraud, in violation of 18 U.S.C. § 2314. Each of the numerous mailings, communications and transportations, transmittals, or transfers using interstate facilities that were made in furtherance of Defendants' scheme to defraud Plaintiff and Class members constitute separate and distinct acts of "unlawful activity," as that term is defined in Section 76-10-1602(4)(g) of UPUAA, Utah Code Ann. § 76-10-1602(4)(g).

135.    Defendants Basic Research, Bremenn, Gay, and Friedlander also have repeatedly violated Utah Code § 76-10-1801, prohibiting Communications Fraud.

136.    Each of those violations constitute predicate acts of "unlawful activity" under Utah Code § 76-10-1602(4)(hhhh).

137.    Each Defendant, by means of the acts and allegations described above, and by communicating directly or indirectly through advertisements with consumers for the purpose of selling Vycera-CLS, has devised a scheme or artifice to defraud Plaintiff, or has obtained from Plaintiff and Class, money by means of false or fraudulent pretenses, misrepresentations, promises or material omissions.

138.    Each of these advertisements or communications violated Utah Code § 76-10-1801 by, *inter alia*:

a.       Bestowing, conveying, making known, recounting or imparting;

b.       Giving by way of information;

42

c.      Talking over; or

d.      Transmitting information.

139.    Each separate communication, including but not limited to the use of the mail, telephone, radio, television, newspaper, computer, and spoken and written communication, made by Defendants Basic Research, Bremenn, Gay, and Friedlander for the purpose of executing or concealing the scheme or artifice to defraud is a separate act and offense of communication fraud.  Utah Code § 76-10-1801.

140.    The communications, pretenses, representations, promises and/or material omissions made or omitted by Defendants Basic Research, Bremenn, Gay, and Friedlander were made or omitted intentionally, knowingly, or with a reckless disregard for the truth.

141.    At the time Defendants Basic Research, Bremenn, Gay, and Friedlander intentionally, knowingly or recklessly made such communications, the value of the money obtained through or sought to be obtained through those statements exceeded $5,000, and the conduct was punishable by imprisonment for a term of between one and 15 years.

142.    Violations of Utah Code § 76-6-507, prohibiting deceptive business practices also constitute predicate acts of "unlawful activity" pursuant to Utah Code § 76-10-1602 (4)(cc).

143.    In the course of business, Defendants Basic Research, Bremenn, Gay, and Friedlander sold, offered and exposed for sale adulterated or mislabeled commodities in violation of Utah Code § 76-6-507, as alleged herein.

144.     Vysera-CLS was "mislabeled" as defined by Utah Code § 76-6-507(2)(b), because the promises and information in the products' advertising materials were false and/or misleading, as alleged herein.

145.     The fraudulent and deceptive activities engaged in by Defendants Basic Research, Bremenn, Gay, and Friedlander, and each of them, in marketing Vysera-CLS to Plaintiff and Class members involve and affect interstate commerce. As alleged in this Complaint, Defendants market, sell and deliver Vysera-CLS throughout the United States.

146.     By committing such offenses, which victimized Plaintiff and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants Basic Research, Bremenn, Gay, and Friedlander and each of them, have engaged in a "pattern of unlawful activity," as that term is defined in Section 76-10-1602(2) of UPUAA, Utah Code Ann. § 76-10-1602(2).

147.     Defendants Basic Research, Bremenn, Gay, and Friedlander, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," as described in Paragraph [133], through a pattern of racketeering activity, in violation of Section 76-10-1603(3) of UPUAA, Utah Code Ann. § 76-10-1603(3).

148.     Defendants Basic Research, Bremenn, Gay, and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," as described in Paragraph [133], through a pattern of racketeering activity, in violation of Section 76-10-1603(4) of UPUAA, Utah Code Ann. § 76-10-1603(4).

149.     Plaintiff and Class members who purchased Vysera-CLS have been injured in their person or property and, therefore, have standing to sue Defendants Basic Research, Bremenn, Gay, and Friedlander under Section 76-10-1605(1) of UPUAA, Utah Code Ann. § 76-10-1605(1).

150.     Plaintiff and members of the Class have been injured by reason of Defendants Basic Research, Bremenn, Gay, and Friedlander's violation of Utah Code § 76-10-1603 and are entitled to recover two times the actual damages sustained pursuant to Utah Code § 76-10-1605.

151.     Pursuant to Utah Code § 76-10-1605, Plaintiff and members of the Class are also entitled to recover their costs of suit and attorneys' fees.

152.     By virtue of their violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann. § 76-10-1603(3) and (4), Defendants Basic Research, Bremenn, Gay, and Friedlander, and each of them, are jointly and severally liable to Plaintiff and Class members for two times the damages that Plaintiff and Class members suffered as a result of Defendants' scheme to defraud.

## FIFTH CAUSE OF ACTION
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.
### (against all Defendants)

153.     Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

154.     Vysera-CLS is a consumer product as defined in 15 U.S.C. § 2301(1).

155.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

156.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

157.    In connection with the sale of the Vysera-CLS, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by representing in magazine advertisements, on the internet, and in point-of-purchase advertisements that Vysera-CLS (1) will cause substantial weight loss without diet and exercise; (2) will cause substantial weight loss by blocking the absorption of calories; and (3) will cause the loss of fat from those "hard-to-target" places, including the hips, thighs, and butt.

158.    In fact, Vysera-CLS does not conform to the above-referenced representations because they are false and misleading. Indeed, competent and reliable scientific evidence proves that each representation is false.

159.    By reason of Defendants' breach of warranties, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

160.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Vysera-CLS if the true facts had been known concerning its efficacy.

**SIXTH CAUSE OF ACTION**
**Violation of the Utah Consumer Sales Practices Act,**
**Utah Code Ann. §§ 13-11-1, et seq.**
**(against all Defendants)**

161.    Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

162.    In connection with the purchase and sale of Vysera-CLS, Plaintiff and the Class are "consumers" and Defendants are "suppliers," within the meaning of the UCSPA.

163.    The purchase of Vysera-CLS by Plaintiff and members of the Class, as described herein, constitute "consumer transactions" within the meaning of the UCSPA.

164.    Defendants' business practices in marketing, advertising and promoting Vysera-CLS, as described herein, are intentionally and willfully false, misleading and fraudulent.

165.    In marketing, advertising and promoting Vysera-CLS, Defendants willfully and intentionally made representations regarding the product that were known by Defendants to be false and untrue.

166.    Defendants' unlawful conduct, as set forth herein, had (and has) the capacity to mislead or deceive consumers, including Plaintiff and the members of the Class. Such unlawful conduct did mislead and deceive Plaintiff and the members of the Class, and continues to do so.

167.    Defendants' willful and intentional false promises and misrepresentations, as set forth herein, are material because they relate to matters as to which reasonable persons, including Plaintiff and members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of Vysera-CLS.

168.    Defendants' misrepresentations in their marketing and advertising concerning the efficacy of Vysera-CLS, as described herein, constitute false, deceptive, misleading and unconscionable practices, in violation of the UCSPA.

169.    Defendants acted in the face of prior notice that their conduct was deceptive, unfair and unconscionable. It is well established under the UCSPA, as well as the FTC Act, that material omissions and misrepresentations regarding a defective product's characteristics and efficacy constitute a violation of the statute. Further, the FTC has previously admonished Defendants, and brought enforcement proceedings against Defendants, concerning the same or similar misconduct as that alleged in this Complaint, and Defendants have entered into consent judgments prohibiting such conduct.

170.    Application of UCSPA to all Class members throughout the United States, regardless of their state or residence, is appropriate because, inter alia:

a.    Defendants' nationwide sales operations are controlled, directed and originated from Salt Lake City, Utah;

b.    Defendants' marketing operations, including the decisions regarding how to advertise, promote and sell Vysera-CLS, are made in Salt Lake City, Utah, and internal marketing personnel and external marketing consultants are all based there;

c.    Defendants' telephone sales force, customer service, and Internet website and advertising operations are controlled, directed and originate in Salt Lake City, Utah;

d.    Defendants' principal place of business is in Salt Lake City, Utah;

e.    All significant employees of Defendants are based in Salt Lake City, Utah;

48

f.      Internet sales of Vysera-CLS are place, fulfilled and carried out in Salt Lake City, Utah; and

g.      The facts and circumstances of this case include such numerous contacts with the State of Utah as to create a state of interest in applying Utah's consumer laws to Defendants, making application of Utah law to the entire Class appropriate.

171.    As a result of Defendants' violations of UCSPA, Plaintiff and the Class have suffered damages, and are entitled to recover such damages, equitable and restitutionary measures as are available under the UCSPA, together with appropriate penalties, including attorneys' fees and costs of suit.

172.    As a direct and proximate result of Defendants' unlawful conduct in violation of the UCSPA, Plaintiff and members of the Class have been injured and suffered loss of money and property.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(against all Defendants)**

173.    Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

174.    In connection with the sale of Vysera-CLS, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that it would provide consumers with significant weight and fat loss from specific areas of their bodies, such as the waist, hips, thighs, and butt, without diet and exercise by blocking the

absorption of calories, in magazine advertisements, on the internet, and in point-of-purchase advertisements.

175.     Each of these warranties is false and misleading, as proven by competent and reliable scientific evidence, as detailed above.

176.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breaches because they would not have purchased Vysera-CLS if the true facts concerning their efficacy had been known.

### EIGHTH CAUSE OF ACTION
### Unjust Enrichment/Restitution
### (against all Defendants)

177.     Plaintiff incorporates by reference and reasserts each of the foregoing allegations herein.

178.     Plaintiff's cause of action for restitution is pled in the alternative to other causes of action asserted herein.

179.     Plaintiff is not challenging any statement on Defendants' labels required by the FDA.

180.     As a result of Defendants' misconduct in the form of deceptive marketing of Vysera-CLS as set forth above, Defendants have received a benefit at the expense of Plaintiff and proposed Class Members that would be unjust for Defendants to retain.

181.     As a result of Defendants' unjust enrichment, Plaintiff and the Class Members are entitled to restitution in the form of a return of the unjust financial benefit conferred by Plaintiff and Class Members on Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, requests the following relief:

A.      An Order that this action may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed to represent the Class, and that Plaintiff's counsel be appointed as counsel for the Class;

B.      A permanent injunction against Defendants, restraining, preventing and enjoining Defendants from engaging in the illegal practices alleged;

C.      An order requiring Defendants to disgorge the profits wrongfully obtained through the use of their illegal practices;

D.      Actual damages;

E.      Statutory damages;

F.      Punitive damages;

G.      An award of attorneys' fees;

H.      An award of the costs of suit reasonably incurred by Plaintiff and her counsel;

I.      An award of interest, including prejudgment interest, at the legal rate, and;

J.      Such other and further relief as the Court deems necessary and appropriate.

RESPECTFULLY SUBMITTED this 7th day of October, 2016.

GOEBEL ANDERSON PC

*/s/ Heidi G. Goebel*
Heidi G. Goebel
Timothy J. Curtis

GOLDMAN SCARLATO & PENNY, P.C.

Brian D. Penny
Laura Killian Mummert

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2016, I electronically filed the within **AMENDED CLASS-ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned case, including:

Christopher B. Sullivan
David R Parkinson
Jason M. Kerr
Ronald F. Price
PRICE PARKINSON & KERR PLLC
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
sullivan@ppktrial.com
davidparkinson@ppktrial.com
jasonkerr@ppktrial.com
ronprice@ppktrial.com


*/s/ Karen Harwood*