Heidi G. Goebel, 10343
Timothy J. Curtis, 10195
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
HGoebel@GAPClaw.com
TCurtis@GAPClaw.com

Brian D. Penny (*Admitted Pro Hac Vice*)
Laura Killian Mummert (*Admitted Pro Hac Vice*)
GOLDMAN SCARLATO & PENNY, P.C.
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: (484) 342-0700
penny@lawgsp.com
mummert@lawgsp.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADELAIDE SPENCE, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>BASIC RESEARCH, LLC, BREMENN RESEARCH LABS, LLC d/b/a BREMENN CLINICAL, DENNIS GAY, MITCHELL K. FRIEDLANDER, and TIFFANY STROBEL<br><br>     Defendants. | No. 2:16-cv-00925-CW<br><br>Judge Clark Waddoups<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. vii

STANDARD ON A MOTION TO DISMISS ......................................................................... x

ARGUMENT ..................................................................................................................... 1

   I.    PLAINTIFF HAS ADEQUATELY ALLEGED VIOLATIONS OF RICO ...................... 1

      A.  Plaintiff has adequately alleged numerous "predicate acts" by each Defendant ....... 1

      B.  Plaintiff has adequately alleged the existence of an "enterprise" ............................. 4

      C.  Plaintiff's UPUAA Claims are adequately alleged for the same reasons ................. 7

  II.   PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE ADEQUATELY
       ALLEGED ........................................................................................................... 7

      A.  Defendant's choice of law analysis is incomplete and unnecessary ......................... 7

      B.  Plaintiff's Complaint is Clear and is Not "Masquerading" as Anything .................. 8

          1.  Plaintiff alleges Defendants' advertising is false and misleading, *not* that it
             lacks substantiation ........................................................................................ 8

          2.  The Complaint does not mischaracterize Defendants' advertisements ............ 9

          3.  Defendants' attempts to discredit Plaintiffs' allegations regarding scientific
             studies on Vysera's active ingredient are premature at the pleading stage ...... 10

          4.  Plaintiff's allegations regarding the FTC Consent Order merely support its
             false advertising claim ................................................................................... 11

      C.  Plaintiff's UCSPA Claim Should Be Sustained ..................................................... 11

          1.  The Complaint adequately pleads intent ......................................................... 14

          2.  The Complaint adequately states a claim against the individual defendants ... 14

          3.  Plaintiff's UCSPA claim is not preempted by the Federal Trade
             Commission Act ............................................................................................ 15

      D.  The UCSPA Does Not Preempt Plaintiff's Other State Law Claims. ..................... 17

E.   The Complaint Adequately Alleges a Claim for Breach of Warranty in Violation
     of the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§2301, et seq. ..... 17

     1.   Plaintiff has adequately alleged Defendants' numerous false and
          misleading statements breach their warranty ................................................... 17

     2.   Plaintiff is not required to provide Defendants with pre-suit notice of her
          MMWA claim ................................................................................................. 18

     3.   Plaintiff adequately alleges the existence of a written warranty covered by
          the MMWA ..................................................................................................... 20

     4.   Plaintiff adequately alleges the Individual Defendants are "suppliers" and
          "warrantors" of Vysera ................................................................................... 22

F.   The Complaint Adequately Alleges a Claim for Unjust Enrichment ..................... 23

     1.   Plaintiff adequately alleges false statements about Vysera ........................... 23

     2.   Plaintiffs need not allege they conferred a "direct" benefit on Defendants ..... 23

     3.   Plaintiff's Unjust Enrichment claim is plead in the alternative and should
          not be dismissed at the pleading stage ........................................................... 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*A.G. v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013)........................................................ xi

*American Fin. Servs. V. FTC*, 767 F.2d 957 (D.C. Cir. 1985) .................................... 16

*Arnett v. Howard*, No. 2:13-CV-591, 2014 U.S. Dist. LEXIS 38633 (D. Utah, March 21, 2014)........................................................................................................................ 25

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................... x, xi, 8

*Bearden v. Honeywell Int'l, Inc.,* 720 F.Supp.2d 932 (M.D. Tenn. 2010) ................................. 20

*Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015)...................................... 22

*Brady v. Basic Research, LLC, et al.*, No. 09-cv-8013 (C.D. Cal.) .............................................. viii

*Brown v. GNC Corp.* (*In re GNC Corp., Triflex Prods. Mktg. & Sales Practices Litig. (No. II)*), 789 F.3d 505 (4th Cir. 2015) ........................................................................... 10

*California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272 (1987) ......................................... 16

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)....................................................... 17

*Cliff v. Payco Gen. Am. Credits, Inc*., 363 F.3d 1113 (11th Cir. 2004)....................................... 15

*Diaz v. Paragon Motors of Woodside, Inc*., 424 F. Supp. 2d 519 (E.D.N.Y.2006) .................... 22

*Electrical Workers* v. *Foust*, 442 U.S. 42 (1979) ....................................................................... 16

*Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp 2d 237 (D.N.J. 2000) ................... 4

*Estrada v. Mendoza*, 2012 UT App 82 ................................................................................. 11, 12

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)....................................... 15

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ...................................... 15

*General Motors Corp v. Abrams*, 897 F.2d 34 (2nd Cir. 1990)................................................... 16

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......... 21

*Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391 (4th Cir. 1974) .................................. 6

*Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165 (D.N.M. 2012) ....................................... xi

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.,* 148 F. Supp. 3d 285 (S.D.N.Y. 2015) ....... 9

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................... 10

*In re Canon Cameras Litig.*, No. 05-cv-7233, 2006 U.S. Dist. LEXIS 43223 (S.D.N.Y. June 21, 2006) ................................................................................................................... 24, 25

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013) ......................................................................................................... 11

*In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801 (N.D. Ohio 2012) ................ 19, 20

*Katharine Gibbs School Inc. v. FTC*, 612 F.2d 658 (2nd Cir. 1979) ............................................ 17

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ........................................................................... 15

*Miller v. Basic Research, Inc.*, No. 2:07-CV-871, 2008 U.S. Dist. LEXIS 87655 (D. Utah Oct. 27, 2008) ................................................................................................................................. 1

*Miller v. Basic Research, LLC*, No. 07-cv-00871 (D. Utah) ................................................. viii, 25

*Orteck Int'l, Inc. v. Transpacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702 (D. Md. Sept. 5, 2006) ....................................................................................... 6

*Porter v. Chrysler Group LLC*, No. 6:13-cv-555, 2013 U.S. Dist. LEXIS 104927 (M.D. Fla. July 25, 2013) ...................................................................................................................... 19, 20

*Rawson v. Conover*, 20 P.3d 876 (Sup. Ct.) ................................................................................ 9

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) .......................................................... 10

*Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025 (S.D. Tex. 2016) ..................................... 19

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984) ..................................................................................................................................... 1, 4

*Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261 ........................................................ 11

*Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d 214 (App. Div. 2003) ................................. 22

*Silkwood v. Kerr-McGee*, Corp., 464 U.S. 238 (1984) .................................................. 15

*Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ........................................................................................................................ 21

*Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 U.S. Dist. LEXIS 131564 (EDNY Sept. 26, 2016) ................................................................................................................. 20, 21

*Southwood v. Credit Card Solution*, No. 7:09-CV-00081, 2016 U.S. Dist. LEXIS 48039 (E.D.N.C. Feb. 26, 2016) ............................................................................................... 6

*Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sep. 13, 2013) ....................................................................................................................... 11

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207 (10th Cir. Colo. 2000) ........ 7

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...................................... 24

*Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) ..................................................... 19

*Webster v. Reprod. Health Servs.*, 492 U.S. 490 (1989) ........................................................... 8

*Wyeth v. Levine*, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) ...................................................... 15

**Statutes**

15 U.S.C. § 2301 .................................................................................................................... 22

15 U.S.C. § 57b ...................................................................................................................... 16

NY GBL § 349 ........................................................................................................................ 21

Utah Code Ann. § 13-11-1 ....................................................................................................... 12

Utah Code Ann. § 13-11-19 ................................................................................................ 12, 13

Utah Code Ann. § 13-11-3 ....................................................................................................... 14

Utah Code Ann. § 13-11-4 ....................................................................................................... 12

Utah Code Ann. § 13-11-5 ....................................................................................................... 13

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................... 17

Fed. R. Civ. P. 9(b) ............................................................................................................. 1

# INTRODUCTION

The United States is in the midst of an obesity epidemic and the government has for years attempted to confront the scourge of sham weight loss supplements sold through false advertising claims akin to those Defendants made to sell Vysera. ¶ 69. In 2002, FTC staff conducted a public workshop in an effort to curb deceptive advertising of such supplements. *Id.* The expert panel that spoke at the workshop unanimously agreed that substantial weight loss through malabsorption of calories without diet and exercise (i.e. simply taking a pill to lose weight) is not scientifically feasible. ¶ 71. In 2014, the FTC issued a Reference Guide on false advertising of weight loss products and reiterated "scientists have established that there are some [weight loss] statements that simply can't be true," including those that suggest a person can lose weight without diet and exercise simply by taking a pill. ¶ 73.

Nevertheless, that is precisely what Defendants promised Vysera would do for consumers. For example, they advertised that:

- … unlike your run-of-the-mill "diet pill" that merely helps you lose weight (*while following a strict low-calorie diet*), Vysera can actually reshape your entire body … dropping inch upon inch of unsightly fat from your waist, hips, thighs and tummy … *even if you're eating more than 2,000 calories a day*! (emphasis added)

- People who took this incredible compound not only lost weight, but lost a significant amount of squishy, flabby, unattractive body fat from those hard-to-target places we all hate: our hips, thighs and butt. It also caused a significant reduction in the amount of fat around the waist (yes, that means you can start saying goodbye to your love handles), helping study subjects achieve that tight, sexy, firm figure we all dream of. *And the best part? The compound did all this on 2,000 to 2,200 calories a day! In other words, without*

> ***requiring anybody to follow a low-calorie diet or work out for
> hours every day!*** (emphasis added)

- "It's sort of like eating a [whole donut / entire cupcake], ***but only
  absorbing a fraction of the calories***…."(emphasis added)

- Vysera doesn't just help you get trimmer… it actually works to
  "reshape" your entire body. This incredible formula can help you
  get tighter, leaner, and firmer… ***without making you starve or
  spend hours working out. In fact, in the clinical trial on Vysera's
  key compound, study subjects lost both weight and body fat\*, even
  though they were eating 2,000-2,200 calorie a day***. A recent
  writeup on Vysera explained it like this: "***Think of it this way… it's
  sort of like eating a whole donut, but only absorbing a fraction of
  the calories. How's that for amazing?***" (emphasis added)

(¶¶ 62, 63, 65). These statements are simply false and misleading, not because they are

unsubstantiated, but because they are scientifically implausible.

This is not the first time Defendants tried to capitalize on the nation's obesity crisis or the

first case to allege Defendants violated the law by falsely advertising a weight-loss product. In

addition to other privately litigated cases,[1] the Federal Trade Commission ("FTC") has also

prosecuted Defendants Basic Research, Gay and Friedlander for falsely advertising six other

bogus weight loss products. ¶¶ 50-54.[2]

Defendants spend several pages in their Brief discussing an FTC Consent Agreement and

subsequent FTC proceedings for Defendants' other weight-loss products brought to enforce the

---

[1] *See e.g., Miller v. Basic Research, LLC*, No. 07-cv-00871 (D. Utah) (consolidated proceedings
that allege false statements about the weight-loss product, Akavar); *Brady v. Basic Research,
LLC, et al.*, No. 09-cv-8013 (C.D. Cal.) (alleging false statements about the weight-loss product
Relacore).

[2] Citations to "¶ __," reference paragraphs in Plaintiff's Amended Class-Action Complaint, filed
October 7, 2016 (Dkt. No. 64).

terms of that agreement. *See e.g.*, Br. at pp. viii-xii, 5-8, 18-21.[3] They then take the Consent Agreement and rewrite the Complaint in an attempt to marry the two and concoct some sort of immunity for Defendants' false advertising of Vysera. That litigation and the 2006 Consent Agreement, however, do not affect Plaintiff's claims here. At first glance, they may appear relevant, but the result of that litigation does not dispose of Plaintiff's claims in this case. First, *the FTC litigation did not have anything to do with Vysera*, the false advertising of that product as alleged in this case, or any purported substantiation for it. Second, the FTC litigation raised a single issue discrete to the parties in that case – whether the defendants breached an agreement they struck with the FTC by advertising certain *other* weight loss products without adequate substantiation. Compliance with that agreement, however, does not immunize those defendants from *false advertising claims* here, especially claims that were never addressed in that case.

Also, despite Defendants' incessant insistence to the contrary, *this is not a lack of substantiation case.* Plaintiff's RICO claims, false advertising claims, breach of warranty claims and unjust enrichment claim *all* ask at their core whether Defendants' advertising of Vysera was false and misleading. Indeed, Defendants catalogue eight of Plaintiff's allegations of false advertising in their introduction alone. Br. at xiv. But whether Defendants had some shred of "substantiation" for those advertisements is not dispositive of any claim brought by Plaintiff. The issue ultimately to be tried in this case is whether Defendants' advertising was truthful and not misleading to the average consumer.

---

[3] Citations to "Br. at __" refer to pages in Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 70).

A jury will get to decide whether Defendants' purported substantiation for their claims is more compelling than Plaintiff's evidence that the product does not work as advertised. Fact witnesses might talk about how Vysera was developed, what claims Defendants made about its ability to shed pounds without diet and exercise, and what a reasonable consumer would believe based on those claims. Experts might discuss the science behind the ingredients in Vysera, how natural substances are not know to block the absorption of fat as claimed, and how science has yet to uncover a safe weight loss pill that is effective without diet and exercise. When all the evidence is in, the fact finder will decide which side's evidence is more compelling.

The only issue to be decided on this motion is whether, taking the factual allegations in the Complaint as true and viewed in the light most favorable to Plaintiff, does the Complaint raise a claim (or claims) beyond a mere speculative level. Here, Plaintiffs claims are more than plausible and her Complaint should be sustained. [4]

### STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible

---

[4] Plaintiff notes that Defendants' violation of this Court's Local Rules on briefing have made it difficult to comply with those rules herself and at the same time address all of Defendants' various arguments. By failing to abide by the rule on font size throughout their 118 footnotes and by abusing the rule permitting a "succinct" introduction with 12 pages of argument, including case citations and reference to extrinsic and extraneous "evidence," Defendants have taken a 25-page limit and essentially doubled it.

when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he plausibility standard should be applied to the claim as a whole." *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013). "The critical question is whether the claim, viewed holistically, is made plausible by 'the cumulative effect of the factual allegations' contained in the complaint." *Id*.

"At the rule 12(b)(6)-motion-to-dismiss stage, the Court must accept as true all well-pleaded factual allegations in [the] Complaint, view those allegations in the light most favorable to [the plaintiff], and draw all reasonable inferences in [the plaintiff's] favor." *See Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165, 1184 (D.N.M. 2012).

**ARGUMENT**

**I. PLAINTIFF HAS ADEQUATELY ALLEGED VIOLATIONS OF RICO**

    **A.    Plaintiff has adequately alleged numerous "predicate acts" by each Defendant**

Plaintiff alleges Defendants' false advertisements utilized the mail, print media, and the internet, which each constitutes a separate "predicate act" of mail or wire fraud. ¶¶ 9, 95-100; 110-115 and 125. Defendants do not contest that false advertisements disseminated online or through print media can establish either mail or wire fraud, but that plaintiffs have not alleged these acts with sufficient particularity.

Defendants' argument, however, depends entirely upon their bare conjecture that predicate acts need to be pleaded with an excruciating amount of detail. But "[t]he Tenth Circuit has stated that the purpose behind Rule 9(b) is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based.'" *See Miller v. Basic Research, Inc.*, No. 2:07-CV-871, 2008 U.S. Dist. LEXIS 87655, at *19 (D. Utah Oct. 27, 2008); *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (noting that nothing in Rule 9(b) requires plaintiffs to make allegations of "date, place or time" and that "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").

This Court already has found such RICO allegations are adequate in a nearly analogous case involving many of the same defendants, virtually the same RICO claims and defenses, and a strikingly similar miracle weight-loss drug. *See Miller*, 2008 U.S. Dist. LEXIS 87655, at *18-19 (rejecting Defendants' argument that plaintiff must describe the specific time that she viewed the

advertisement and identify an appropriate link between the Defendants and the advertisement because "neither the Tenth Circuit, nor this Court, have required that a plaintiff state the specific time at which the fraudulent claim was made"). Here, as in *Miller*, plaintiff has adequately alleged the "who, what, when and where" of numerous predicate acts of mail or wire fraud.

**Who.** "Under the direction of Defendants Gay and Friedlander, Basic Research's 'marketing department' is responsible for the labeling, advertising, and media placement for Vysera and other dietary supplements sold by Defendants throughout New York and the United States." ¶ 20. "Bremenn is an affiliate of Basic Research created for the sole purpose of advertising, marketing and selling certain skincare and other products developed by the Defendants, including Vysera. Bremenn markets, advertises, and promotes Vysera under the explicit direction of Defendants …." ¶ 23. "Gay has at relevant times exercised final decision-making authority over work carried out in Basic Research's "Marketing Department" and has been personally responsible for the design, content approval, distribution, and publication of all Vysera labeling and advertisements, including the specific advertisements viewed and relied upon by Plaintiff and Class members." ¶ 26. "[A]t relevant times Gay was ultimately responsible for placing the advertisements for products, including Vysera, into the stream of commerce and for selling the products in interstate commerce." ¶ 27. "Friedlander is the self-described "marketing guru" of Basic Research and has been described as the 'idea man' behind numerous advertising campaigns for dietary supplements carried out by Defendants and their affiliated companies." ¶ 34. "At relevant times, Friedlander had primary responsibility for the design, content, approval, distribution, and publication of Defendants' advertisements, including the

Vysera advertisements viewed by Plaintiff." ¶ 35. Friedlander has since confirmed that "[a]s an employee of Bydex, [he] led a collaborative team in connection with the creation of advertisements for Basic and its affiliated companies, including Bremenn." Friedlander Decl. (Dkt. No. 69-2) ¶ 4. "Acting in concert with Defendants Gay, Basic Research and Bremenn, Friedlander developed the marketing and advertising campaign for Vysera." ¶ 56. Plaintiff has thus alleged, with great detail, who committed the predicate acts of mail and wire fraud by making and disseminating false advertising of Vysera.

**What.** Plaintiff has detailed, in fact specifically quoted, numerous false and deceptive advertisements. *See* ¶¶ 62-67. She has even attached copies of five allegedly false advertisements to her Complaint. *See* Complaint Exhibits A-E.

**When**. Plaintiff alleges that on March 1, 2013 and March 14, 2013, Defendants' business entities listed trademarks with the United States Patent Trademark Office for Vysera and Bremenn Labs as part of their allegedly fraudulent scheme and then, "[s]tarting on or about this date, Defendants began marketing Vysera to Plaintiff and Class members throughout Utah, New York and the United States. Sales of Vysera to consumers continue to date." ¶ 57. Plaintiff further alleges that she purchased Vysera on March 29, 2015 and "Prior to her purchase, Plaintiff carefully read and reviewed advertisements for Vysera on the internet, which upon information and belief, were designed, sponsored and maintained by Defendants." ¶ 16.

**Where**. Plaintiff alleged the false advertisements for Vysera were "published in national magazines, displayed in retail stores across the county ("point of purchase"), circulated through a series of press releases, published on the Internet, and posted on social media" and that they

"appeared in various national magazines, including *US Weekly*, *Parade* and *OK! Magazine*, as well as on Defendants' website, www.VyserCLS.com and Defendants' Facebook pages, https://www.facebook.com/Vysera and https://www.facebook.com/BremennLabs." ¶¶ 60-61. She further alleged that the point of purchase misrepresentations were made in stores operated by "Ulta, Kohl's, GNC, and Boscov's," among others, and online at Defendants' websites VyseraCLS.com and BremennClinical.com. ¶ 58.

Considering the level of detail alleged it is not "impossible for defendants to have any idea which specific predicate acts upon [sic] which plaintiff is relying." Rather, it is implausible that such detail of defendants' own advertisements leaves them in the dark as to which predicate acts of mail and wire fraud plaintiff asserts. Thus, they are sufficiently alleged.

**B.      Plaintiff has adequately alleged the existence of an "enterprise"**

At the pleading stage, "a plaintiff need only identify the entities it believes constitute the RICO enterprises". *See Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp 237, 264 (D.N.J. 2000). *See also Seville*, 742 F2d at 790 ("[i]n the present case, [plaintiff] identified the four entities it believed were the enterprises that had been marshaled against it. The rules of pleading require nothing more at this early juncture than that bare allegation"). Here, Plaintiff alleged the RICO enterprise consists of Defendants Basic Research, Bremenn, Gay and Friedlander. Thus, the "enterprise" is adequately alleged.

Nevertheless, Defendants appear to argue in their motion that since they are all operating as agents of the same corporation they cannot be considered a RICO "enterprise." Br. at pp. 2-3. This argument, known generally as the intra-corporate immunity doctrine, however

misrepresents the Complaint and directly conflicts with other arguments Defendants make regarding standing. *See generally* Motion to Dismiss for Lack of Standing, Dkt. No. 69, pp. 4-5.

The Complaint alleges that Defendants did not operate as a single corporation, but specifically created a web of interrelated entities to effectuate their scheme. ¶ 6. In fact, Plaintiff alleges the Defendants created at least 15 different companies and operate under at least 13 different trade names to conduct their sale and marketing of different products. ¶¶ 19-20. She also alleges Defendants specifically created Bremenn as a distinct entity from Basic for the sole purpose of advertising, marketing and selling certain products, including Vysera, and that they use Bydex Management, a staffing and operations company, to separately employ the various decision makers. ¶¶ 23 and 30.

Gay confirmed in his declaration that prior to November 2014 he was actually an employee of Bydex, "a company whose employees provide services *to other companies*, including [Bremenn and Basic Research]" *See* November 14, 2016 Decl. of Dennis Gay (Dkt. No. 69-1), ¶ 3 (emphasis added). Gay also declared that Basic and Bremenn are *distinct corporate entities* and that each of them has always "maintained and respected the necessary corporate formalities and structure." *See* November 5, 2015 Decl. of Dennis Gay (submitted in the E.D.N.Y. proceedings prior to transfer to this district), ¶¶ 23-24. Friedlander also declared that prior to December 2014 he was an employee of Bydex that provided services to Basic and Bremenn, *as well as other companies*. *See* November 14, 2016 Decl. of Mitchell K. Friedlander (Dkt. No. 69-2), ¶ 4. Accordingly, by their own arguments defendants were operating through distinct corporate entities. "At this juncture, any argument that the entities cannot conspire

because they are too closely related cannot provide the basis for dismissal of the conspiracy claim." *See Orteck Int'l, Inc. v. Transpacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 U.S. Dist. LEXIS 67702, at *92-93 (D. Md. Sept. 5, 2006).

Defendants purposely created a web of purportedly independent companies, some that employed them, some that developed Vysera, and others that marketed and sold it. They cannot now plausibly allege they were all operating as part of a single corporation and thus, cannot rely on the intra-corporate immunity doctrine to shield them from RICO liability.

Even if the Court were to find, at the appropriate juncture, that Gay and Friedlander were employees or agents of Basic and Bremenn, there is also a well-established exception to the intra-corporate immunity doctrine where "the officer has an independent personal stake in achieving the corporation's illegal objectives." *See Southwood v. Credit Card Solution*, No. 7:09-CV-00081, 2016 U.S. Dist. LEXIS 48039, at *37 (E.D.N.C. Feb. 26, 2016) (citing, *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). Here, Plaintiff alleged Friedlander receives royalty payments related to the sale of each product he helped develop and promote and thus has a direct financial interest (¶¶ 36-37), and Gay is alleged to have such dominion and control over Basic and Bremenn that they operate as his alter egos committing fraud for his own personal gain. (¶ 30) Thus, even if they were operating under the color of the same corporate flag, their direct and personal financial interest in the conspiracy exempts them from any protection the intra-corporate immunity doctrine may have offered.

### C. Plaintiff's UPUAA Claims are adequately alleged for the same reasons

As Defendants argue, the provisions of UPUAA are nearly identical to those contained in RICO. Br. at p.3. As the Complaint adequately alleges RICO violations against Defendants Basic, Bremenn, Gay and Friedlander, so too does it adequately allege violations of UPUAA by each of these defendants.

## II. PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE ADEQUATELY ALLEGED

### A. Defendant's choice of law analysis is incomplete and unnecessary

Defendants purport to conduct a choice of law analysis, but they neglect to analyze the threshold issue— whether there is actually any material conflict of law. In the absence of any demonstrated conflict, courts routinely decline to consider choice of law issues. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1224, (10th Cir. Colo. 2000) ("courts routinely decline courts routinely decline to consider choice of law issues in the absence of a demonstrated conflict"). By failing to address whether a conflict actually exists in the context of its motion, Defendants fail to establish why it would be prudent for the Court to make such a determination. It also directly conflicts with arguments Defendants made in the Southern District of New York to transfer this case to Utah, in which they implored the court that everything of substance in this case occurred in Utah. *See e.g.* Ex. A, Goebel Decl. (Brief in support of Defendants' Motion to Transfer Venue at pp. 4, 8). They even went so far as to aver there is no conflict of law, stating Plaintiff's "… *two common law causes of action are generic causes of action with no substantive difference between New York and Utah law. As a result, the choice of law analysis shows that Utah has the greatest interest in this litigation and is best suited to resolve the relevant law that*

*Plaintiff has invoked*." *Id.* at pp. 11-12 (emphasis added). Since there is no conflict of law, there is no reason to conduct a choice of law analysis.

**B.     Plaintiff's Complaint is Clear and is Not "Masquerading" as Anything**[5]

      1.   <u>Plaintiff alleges Defendants' advertising is false and misleading, *not* that it lacks substantiation</u>

Plaintiff is the master of her complaint. *See e.g. Webster v. Reprod. Health Servs*., 492 U.S. 490, 512 (1989) (stating, "Plaintiffs are masters of their complaints…"). In it, she implored, "[t]o be clear, Plaintiff is not alleging that Defendants lack substantiation for their claims; rather Plaintiff is alleging these claims are simply false." ¶ 74. Plaintiff included that statement in her Complaint to avoid any mischaracterization of her claims or confusion. Nevertheless, Defendants spend many pages trying to convince the Court otherwise. In the end, the Complaint is clear and consistent that Plaintiff's theory of liability is based on allegations that Defendants' advertising for Vysera is *false and misleading*, and she sued causes of action that are also consistent with this theory. Nowhere in the Complaint does Plaintiff ever allege Defendants merely lacked substantiation for their product claims.

Plaintiff is also not required to *prove* Defendants' advertising is false on a motion to dismiss. At this stage, the only inquiry is whether the allegations of the complaint, taken as true and viewed in the light most favorable to the plaintiff, state a claim that is *plausible on its face*. *See Iqbal*, 556 U.S. at 678. To this end, Plaintiff cites in her Complaint, *inter alia*, (1)

---

[5] In an effort to directly address Defendants' arguments in a way that is easy for the Court to track, Plaintiff's briefing sections attempt to align with Defendants' structure as closely as possible. This section is meant to address Defendants' Section II. B., at pages 5-14.

Defendants' history of falsely advertising similar "miracle" weight loss and skin care products (¶¶ 5, 33, 38-41, 49-54), (2) scientific studies that found the active ingredient in Vysera was ineffective (¶¶ 76-80), (3) Congressional hearing information in which defendants' business practices of selling weight loss supplements was questioned as illegitimate (¶¶ 52-53), and (4) allegations that according to experts in the field, simply taking a pill, without also engaging in diet and exercise regimes will not shed pounds (¶¶ 69-74). Each of these allegations alone adequately alleges plausible claims, but taken together and viewed "holistically," the Complaint more than adequately alleges Defendants' advertising is *false and misleading*.

2.  The Complaint does not mischaracterize Defendants' advertisements

Defendants argue that Plaintiff mischaracterizes their advertisements and avers they never promised Vysera would shed pounds without diet or exercise. Br. at pp. 13-14. Plaintiff is content to let the advertisements speak for themselves and notes that even the selection Defendants cite specifies "Vysera can actually reshape your entire body…*even if you're eating more than 2,000 calories a day!*" and "[t]he compound did all this on 2,000 to 2,200 calories a day! *In other words, without requiring anybody to follow a low-calorie diet or work out for hours a day.*" Br. at 14 (emphasis added). Ultimately, these statements and others like them will be subject to the "reasonable person" standard, meaning the inquiry will be what an ordinary person acting reasonably under the circumstances would believe the statements meant or promised. *See, e.g.*, *Rawson v. Conover*, 20 P.3d 876, 887 (Sup.Ct.) (applying the "reasonable person" standard to express warranty claims under Utah law). That inquiry, however, is for the trier of fact and is premature on a motion to dismiss. *See Hidalgo v. Johnson & Johnson*

*Consumer Cos., Inc.,* 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("[U]sually [the reasonable

consumer] determination is a question of fact."); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958

(9th Cir. 2015) ("[T]he reasonable consumer standard . . . raises questions of fact that are

appropriate for resolution on a motion to dismiss only in 'rare situation[s].'"). Likewise, to the

extent there is essentially a footnote on the packaging that suggests the product should be used in

connection with a diet and exercise plan that can only be viewed after purchasing the product and

opening the box, whatever that plan says is (1) not properly before the Court now and (2) will be

just one of the factors the trier of fact will ultimately consider when assessing the truthfulness of

Defendants' advertising at the proper time.

        3.      <u>Defendants' attempts to discredit Plaintiffs' allegations regarding
scientific studies on Vysera's active ingredient are premature at the
pleading stage.</u>

      Defendants attempt to discredit or distance themselves from the scientific studies alleged

in the Complaint that found Vysera's active ingredient, *P. vulgaris*, was ineffective in blocking

the absorption of calories. *See e.g.*, Br. at pp. xvi-xviii, 9-13. Those issues, however, are simply

not ripe on a motion to dismiss. Whether scientific studies cited in a complaint support a

plaintiff's claims "is an issue of fact the Court cannot resolve on a motion to dismiss." *Quinn v.

Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013).[6] Both parties will have a chance to

---

[6] *See also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 461-62 (E.D.N.Y. 2013) ("issues
concerning the weight that should be given to [an alleged scientific study discussing vitamin C
supplements] cannot be resolved on a motion to dismiss."); *Brown v. GNC Corp.* (*In re GNC
Corp., Triflex Prods. Mktg. & Sales Practices Litig. (No. II)*), 789 F.3d 505, 517 (4th Cir. 2015)
(rejecting defendants' argument that the scientific studies cited in the complaint are insufficient
evidence of falsity …. our inquiry at this stage is limited to the plausibility of the CAC and not

develop a record on the state of science supporting or debunking Defendants' claims about Vysera, but such issues are not properly resolved on a motion to dismiss.

### 4. Plaintiff's allegations regarding the FTC Consent Order merely support its false advertising claim

Plaintiff is *not* trying to enforce the FTC Consent Order, as Defendants suggest. The allegations regarding that Order are offered merely as a vehicle to catalogue Defendants' numerous prior weight loss schemes and to demonstrate that falsely advertising supplements like Vysera is simply the Defendants' business model. *See e.g.* ¶ 45. In fact, the Consent Order does not address Defendants marketing of Vysera at all. Rather, it deals with six *other* products sold before 2006. And while the agreement prohibits Defendants from advertising additional products unless they have substantiation for the claims, Plaintiff is not alleging that a violation of that Order gives rise to relief in this case.

### C. Plaintiff's UCSPA Claim Should Be Sustained.

The UCSPA creates a cause of action against a 'seller' who commits either a 'deceptive or an 'unconscionable' 'act or practice ... in connection with a consumer transaction ... whether it

---

the ultimate truth of its allegations: The applicability of a study regarding different dosages of the same ingredients to the products at issue is not susceptible to resolution at the motion-to-dismiss stage."); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1319 n.1 (S.D. Fla. 2013) ("because this case is at the motion to dismiss stage, the Court takes all the well-pleaded facts in Plaintiffs' complaints as true, and the Court does not make any determinations regarding the findings of the scientific studies."); *Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 U.S. Dist. LEXIS 131135, at *11 n.2 (S.D. Fla. Sep. 13, 2013) (rejecting defendants' challenge to plaintiff's reading of the scientific studies cited in the complaint where "disagreement over interpretation of research, however, is a factual issue inappropriate for resolution on a motion to dismiss.").

occurs before, during, or after the transaction.'" *Estrada v. Mendoza*, 2012 UT App 82, ¶ 5 (Utah App. 2012); *see also Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 20 ("The UCSPA establishes a cause of action for consumers against suppliers for deceptive and unconscionable acts and practices in connection with consumer transactions."). To that end, the UCSPA "shall be construed liberally" to, among other things, "protect consumers from suppliers who commit deceptive and unconscionable sales practices." *Estrada,* 2012 UT App 82, ¶ 5; Utah Code Ann. § 13-11-1.

Contrary to Defendants argument that the Complaint "does not allege defendants have violated a specific rule promulgated by the Division [of Consumer Protection]" (Br. at p. 15), Plaintiff alleges that Defendants engaged in *both* "deceptive" and "unconscionable" conduct under the UCSPA by advertising Vysera to consumers in a false and misleading manner and that she suffered a "loss as a result of a violation of this chapter … caused by an act or practice specified as violating this chapter…" Utah Code Ann. § 13-11-19.

Section 13-11-4(2) of the UCSPA enumerates several acts which are considered deceptive *per se*, and states in pertinent part, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has … characteristics, accessories, uses or benefits, if it has not." Utah Code Ann. § 13-11-4(2)(a). The Complaint is replete with allegations that Defendants' advertising "knowingly or intentionally" promised that Vysera possessed "characteristics…uses or benefits" when it did not. Indeed, the Complaint specifically identifies eight allegations of false advertising in its introduction alone. *See* ¶¶ 1, 3. In her UCSPA cause of action, Plaintiff incorporated all of the

prior allegations and specifically alleged "Defendants' misrepresentations in their marketing and advertising concerning the efficacy of Vysera, as described herein, constitute false, deceptive, misleading and unconscionable practices, in violation of the UCSPA." *See*, Complaint at ¶ 168.

Further, the Complaint alleges Defendants' false marketing, advertising and promoting Vysera constituted an "unconscionable" act or practice under Utah Code Ann. § 13-11-5. Unconscionability does not require proof of specific intent but can be found by considering circumstances which the supplier "knew or had reason to know." Utah Code Ann. § 13-11-5(3). Notwithstanding the same, Plaintiff's Complaint adequately alleges that Defendants "business practices in marketing, advertising and promoting Vysera, as described herein are intentionally and willfully false, misleading and fraudulent." Complaint at ¶ 164.

The UCSPA also provides plaintiffs a reasonable opportunity to prove unconscionability: "If it is claimed or appears to the court that an act or practice may be unconscionable, the parties *shall* be given a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination." Utah Code Ann. § 13-11-5(2) (emphasis added). Plaintiff's factual allegations sufficiently demonstrate that the Defendants' intentional and deceptive marketing, advertising and promotion of Vysera is unconscionable and constitutes a violation of the UCSPA. Moreover, Plaintiff seeks "[a] permanent injunction against Defendants, restraining, preventing, and enjoining Defendants from engaging in the illegal practices alleged." Such relief is specifically available to Plaintiff under Utah Code Ann. § 13-11-19(1)(a), and the Amended Complaint adequately pleads a claim for such relief.

1. <u>The Complaint adequately pleads intent.</u>

The premise of Plaintiff's complaint is that Defendants willfully created an ineffective "miracle pill" and knowingly defrauded consumers into purchasing it. To support those allegations, Plaintiff points to scientific studies that demonstrate Vysera's active ingredient does not block the absorption of fat in the way Defendants promise (¶¶ 75-80), Congressional Hearings that essentially found Defendants' business model was a "sham" (¶ 52), FTC panels and workshops that consistently concluded natural supplements cannot perform as Defendants promise Vysera does (¶¶ 69-74), and Defendants' own track record of falsely advertising numerous other weight loss supplements through strikingly similar deceptive advertising campaigns (¶¶ 49-51, 53-54). Accepting these factual allegations as true, and viewing them in a light most favorable to Plaintiff, she has thoroughly and adequately demonstrated Defendants' knowingly and intentionally mislead and deceived Plaintiff.

2. <u>The Complaint adequately states a claim against the individual defendants.</u>

The UCSPA defines a "supplier" as "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, *whether or not he deals directly with the consumer.*" Utah Code Ann. § 13-11-3(6) (emphasis added). Here, Plaintiff alleged that Basic Research and Bremenn are the alter ego of Defendant Gay. It further alleges that Gay "has been personally responsible for the design, content, approval, distribution, and publication of all Vysera labeling and advertisements including the specific advertisements viewed and relied upon by Plaintiff and Class members. ¶¶ 24-33. With respect to Defendant Friedlander, the Complaint alleges, among other things, Friedlander was "directly involved in the

14

development, manufacture, endorsement, advertising, marketing, and promotion of Basic Research products, including Vysera." *Id.* at ¶¶ 34-42. With respect to Defendant Strobel, the Complaint alleges she is the author of a weight loss blog and "was directly involved in the endorsement and advertising of several products…including Vysera." *Id.* at ¶¶ 42-44. In so doing, the Complaint sufficiently alleges facts demonstrating the Individual Defendants were "suppliers" under the UCSPA as they regularly solicited and engaged in consumer transactions.

        3.      <u>Plaintiff's UCSPA claim is not preempted by the Federal Trade Commission Act.</u>

Defendants' entire preemption argument is built upon the false notion that Plaintiff's claims are based on a violation of the Consent Agreement. As argued, *supra*, Plaintiff's claims do not rely upon a violation of that agreement or make a claim for violation of the FTCA, but rather are based entirely on Defendants' false and deceptive advertising of Vysera. Any suggestion that Plaintiff's claims are expressly preempted must start with the assumption that a state's historic police powers will not be superseded absent a "clear and manifest purpose of Congress," *Wyeth v. Levine*, 129 S. Ct. 1187, 1195, 173 L. Ed. 2d 51 (2009), and the understanding that contract and consumer protection laws have traditionally been reserved for the states, *see*, *e.g.*, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 174 (1982). Further, a "presumption against preemption" often applies to preserve state law claims in the face of preemption claims. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996). Thus, the burden is squarely on the Defendants to demonstrate some intent to preempt state law claims. *Silkwood v. Kerr-McGee*, Corp., 464 U.S. 238, 255 (1984) (citing *Electrical Workers* v. *Foust*, 442 U.S.

42, 53 (1979). The FTCA does not expressly preempt state law causes of action for unfair trade practices. In fact, with respect to injured consumers, the Act's savings clause expressly provides that the remedies set out in 15 U.S.C. § 57b are "in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law." 15 U.S.C. 57b(e).

Having failed to establish express preemption, Defendants are left only with the hope of establishing implied preemption. *See*, e.g., *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987). But implied preemption requires either that (1) the federal scheme of regulation is "so comprehensive in a particular area that it may be reasonable to infer an intent to 'occupy the field' leaving no room for supplemental state regulation", or (2) state law conflicts with federal law in such a way "that compliance with both state and federal regulations is physically impossible." *General Motors Corp v. Abrams*, 897 F.2d 34, 40 (2nd Cir. 1990).

Defendants cite *General Motors* for the proposition that an FTC consent order *could* conflict with and potentially preempt state law. But in *General Motors*, the Second Circuit held that New York's more stringent lemon law *did not* frustrate and thus preempt the FTC consent order. *General Motors*, 897 F.2d at 41, 43. Indeed, noticeably absent in Defendants' memorandum is a citation to a single case in which an FTC action with respect to unfair or deceptive practices preempted a state consumer protection law claim. Other cases have similarly declined to preempt state law claims with FTC regulations. *See*, *American Fin. Servs. V. FTC*, 767 F.2d 957, 989-990 (D.C. Cir. 1985) (FTC regulation prohibiting practices that certain States authorized did not present a preemption question); *Katharine Gibbs School Inc. v. FTC*, 612 F.2d

658, 667 (2nd Cir. 1979)(invalidating FTC regulation asserting broader preemptive effect than Supremacy Clause provides). Thus, there is no preemption here, express, implied or otherwise.

### D. The UCSPA Does Not Preempt Plaintiff's Other State Law Claims.

Defendants' paradoxically claim that (1) the Consent Agreement preempts Plaintiff's UCSPA claims, and (2) the UCSPA preempts the Plaintiff's other state law claims. Br. at p. 21. But Defendants fail to recognize that Plaintiff may plead claims in the alternative and that by merely asserting alternative claims Defendants are not entitled to the dismissal of all claims that may ultimately conflict. Rather, pleading claims in the alternative is explicitly allowed. Fed. R. Civ. P. 8(d)(2), (d)(3); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'"). Plaintiff in this case has not yet elected which remedy she will pursue, and she is not required to do so at the pleading stage. Defendants' Motion on this basis should be denied.

### E. The Complaint Adequately Alleges a Claim for Breach of Warranty in Violation of the Magnusson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§2301, et seq.[7]

1. <u>Plaintiff has adequately alleged Defendants' numerous false and misleading statements breach their warranty</u>

---

[7] Plaintiff agrees to dismiss Count Seven alleging a common law claim for Breach of Express Warranty for lack of pre-suit notice. Plaintiff does not concede that her common law claim was inadequately alleged for any other reason.

Plaintiff alleged Defendants marketed Vysera as a "Miracle Pill" and promised consumers that if they took Vysera, they "would not just lose weight," but would actually "reshape [their] entire body", all without diet and exercise. ¶¶ 62, 63, 65-67. She also alleged these promises were false, because "[a]fter taking Vysera-CLS as directed on the product labelling, Plaintiff did not lose any weight." ¶ 16. While these allegations alone are sufficient, Plaintiff also alleged that Defendants explained in their advertisements that Vysera worked because it contains an exciting new "Body Reshaping" and "Calorie-Blocking" "Compound" (¶ 66), but that scientists participating in panels and workshops organized by the FTC have unanimously and consistently concluded that natural compounds cannot block absorption of calories in the way Defendants promised Vysera's compound could. ¶¶ 69-73. Plaintiff also alleged that several studies on Vysera's compound, *P. vulgaris*, found it was not effective in blocking calorie absorption as promised by Defendants. ¶¶ 76-80. And while Defendants try to distance themselves from these studies arguing they did not specifically study Vysera, the fact that they found Vysera's exciting new compound was ineffective certainly support Plaintiffs' claims of falsity. These factual allegations, especially when viewed in the light most favorable to Plaintiff, allege a breach of warranty claim that is more than merely speculative and certainly is sufficient at the pleading stage.

2.  Plaintiff is not required to provide Defendants with pre-suit notice of her MMWA claim

Defendant misreads the MMWA to require pre-suit notice, but no such notice is required where the plaintiff purports to represent a Class of similarly affected consumers, as is the case

here. The MMWA's notice provision is found in 15 USCS § 2310(e). As several courts have explained, "[t]he plain language of the statute imposes *different requirements* on individual plaintiffs and class action plaintiffs regarding the time at which they must satisfy the opportunity to cure requirement." *See Rosa v. Am. Water Heater Co*., 177 F. Supp. 3d 1025, 1044 (S.D. Tex. 2016) (quoting *In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 824-25 (N.D. Ohio 2012)) (emphasis added). As the court in *Rosa* explained:

> "For individual plaintiffs, Section 2310(e) is a condition precedent to filing suit...In contrast, plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs. Once a court makes this determination, but before the class action can proceed, the defendant must be afforded an opportunity to cure the alleged breach of warranty and the named plaintiffs must at that point inform the defendant that they are acting on behalf of a class."

177 F. Supp. 3d at 1044 (quoting *Porsche*, 880 F. Supp. 2d at 824). *Accord*, *Porter v. Chrysler Group LLC*, No. 6:13-cv-555, 2013 U.S. Dist. LEXIS 104927, at *7-8 (M.D. Fla. July 25, 2013) (recognizing class plaintiffs were not required to afford pre-suit notice and denying defendants' motion to dismiss on that accord); and *Walsh v. Ford Motor Co*., 807 F.2d 1000, 1004 (D.C. Cir. 1986) (stating, "[t]he Act also provides that a plaintiff may file a class action, but may not proceed with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach. While the class action is held in abeyance pending possible cure, the district court may rule on the representative capacity of the named plaintiffs . . . .").

As several courts have recognized, this plain reading of the statute represents the majority position and the authorities cited by Defendants, such as *Bearden v. Honeywell Int'l, Inc.,* 720

F.Supp.2d 932 (M.D. Tenn. 2010), represent outliers. *See e.g.*, *id.* (distinguishing *Bearden* and other cases that require pre-suit notice in a class action as outliers); *Porter v. Chrysler Group LLC*, No. 6:13-cv-555, 2013 U.S. Dist. LEXIS 104927, at *7 n.3 (M.D. Fla. July 25, 2013) (following *Porsche*). Thus, when the plaintiff asserts a class claim under the MMWA, as Plaintiff does here, there is no pre-suit notice requirement. Instead, the opportunity to cure the alleged breach of warranty in a class case comes *after* class certification. *Porsche*, 880 F. Supp. 2d at 824. Accordingly, Defendants will have an opportunity to cure after a class is certified in this case and thus Plaintiff's MMWA claim cannot be dismissed now for lack of pre-suit notice.

3.    Plaintiff adequately alleges the existence of a written warranty covered by the MMWA

As Defendants acknowledge in their brief, a written warranty under the MMWA is one that affirms or promises the product is either (1) "defect free" *or* (2) "will meet a specified level of performance over a specified period of time." Br. at 23. Plaintiff alleged Defendants violated the MMWA "by representing in magazine advertisements, on the internet, and in point-of-purchase advertisements that Vysera (1) will cause substantial weight loss without diet and exercise; (2) will cause substantial weight loss by blocking the absorption of calories; and (3) will cause the loss of fat from those "hard-to-target" places, including the hips, thighs, and butt." ¶ 157. Defendants conclude, without citing a single case, that such claims are not actionable as written warranties. But these are precisely the type of written warranties that are covered by the MMWA. *See Sitt v. Nature's Bounty*, *Inc.*, No. 15-cv-4199, 2016 U.S. Dist. LEXIS 131564 (EDNY Sept. 26, 2016).

In *Sitt*, the product at issue was a purported natural supplement that helped alleviate symptoms of menopause. The plaintiff alleged that statements on the product's packaging about its ability to relieve symptoms of menopause were false and misleading in violation of NY GBL § 349 and the MMWA. *See Sitt*, 2016 U.S. Dist. LEXIS 131564, at *3-4. As Defendants do here, the defendant in *Sitt* argued "that Plaintiff's allegations do not 'identif[y] a defect, or a failure to meet a specified level of performance over a specified period of time' and "that Plaintiff's MMWA claims should fail … because Plaintiff's allegations regarding the Product's labeling and the statements on Defendants' website are either 'directly contradicted by specific facts in the scientific studies she relies on,' are 'demonstrably false,' or, in the case of the use of the word 'natural,' are merely product descriptions." *Id*. at *56.

The court, however, disagreed holding, "because the Court cannot conclude that the Product could not mislead a reasonable consumer, the Court cannot conclude as a matter of law that Defendants' representations about the Product would not amount to a warranty that could induce a consumer to purchase the Product, and which is therefore actionable as an express warranty under either New York law or the MMWA." *Id.* at *56-57. *See also Singleton v. Fifth Generation, Inc*., No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016) (because the plaintiff had stated a New York consumer protection claim that the defendant's vodka bottle labels could mislead a reasonable consumer, the plaintiff had plausibly stated a claim for breach of express warranties); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 486 (S.D.N.Y. 2014) ("[A]s the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are

not misleading for the [express] warranty claim."); *Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (denying a motion to dismiss MMWA because the complaint pled a New York breach of express warranty claim). Accordingly, Defendants' alleged false advertising claims about Vysera are "warranties" actionable under the MMWA.

      4.      <u>Plaintiff adequately alleges the Individual Defendants are "suppliers" and "warrantors" of Vysera</u>

Defendants' final argument on breach of warranty is their proclamation, unsupported by argument or citation of any kind, that Plaintiff "fails to allege any facts which would demonstrate that the individual defendants are 'sellers' or 'warrantors' of Vysera. Br. at 24. The MMWA, however, makes "suppliers," not "sellers" warrantors, and the Act defines "suppliers" and "warrantors" as:

> (4) The term "supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.

> (5) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

*See* 15 U.S.C. § 2301 (4) and (5). The MMWA "makes a warrantor directly liable to a consumer for breach of a written warranty." *See Diaz v. Paragon Motors of Woodside, Inc*., 424 F. Supp. 2d 519, 540 (E.D.N.Y.2006) (citing *Shuldman v. DaimlerChrysler Corp*., 768 N.Y.S.2d 214, 216 (App. Div. 2003)); *see also Brady*, 101 F. Supp. 3d at 234 (same).

Here, Plaintiff separately alleged the important roles that each Individual Defendant played in making the warranties at issue. Gay had final authority over the design, content, approval, distribution and publication of all Vysera advertising and was further responsible for

placing the products into the various sales channels. ¶¶ 26-27. Friedlander is the self-described "marketing guru" of Basic Research where he was directly involved in the development, manufacture, endorsement, advertising, marketing, and promotion of Vysera and receives royalty payments on each sale of the product. ¶¶ 34, 36. Strobel was the purported "author, columnist and beauty editor" for the weight loss blog MyFreeDiet.com, which falsely promoted Vysera, and she authored several of the false print ads for Vysera that appeared in several national magazines, as well as false advertising content appearing on Defendants' website, www.vyseracls.com. ¶¶ 42-44. Considering these individual roles in marketing and selling Vysera, the Individual Defendants are each "warrantors" covered by the MMWA.

### F.    The Complaint Adequately Alleges a Claim for Unjust Enrichment

#### 1.    Plaintiff adequately alleges false statements about Vysera

As discussed, *supra*, Plaintiff adequately alleged Defendants made numerous false and misleading statements about Vysera and that Plaintiff and members of the Class purchased Vysera on the basis of those statements. Under these circumstances, it is patently unjust for defendants to retain the money they each received as a result of their deception. Accordingly, Defendants' argument that the Complaint fails to state a consumer fraud claim, and thus fails to state an unjust enrichment claim, should be rejected.

#### 2.    Plaintiffs need not allege they conferred a "direct" benefit on Defendants.

The fact that Plaintiff purchased Vysera from a third party retailer does not foreclose her unjust enrichment claim. Plaintiff does not need to allege she conferred a "direct" benefit on a defendant, only that the defendant received some benefit that would be unjust for them to retain.

*See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010) (denying motion to dismiss plaintiff-consumer's New York unjust enrichment claim against defendant-manufacturer because "New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant"). In other words, privity between the plaintiff and defendant is not required for an unjust enrichment claim. *See In re Canon Cameras Litig.*, No. 05-cv-7233, 2006 U.S. Dist. LEXIS 43223 (S.D.N.Y. June 21, 2006) ("the laws of the relevant states do not require either a direct relationship between the parties or that a direct benefit be conferred on the defendant.").

Plaintiff alleged that each Defendant was enriched by their participation in the false advertising scheme for Vysera. It is Basic Research's business to develop, manufacture, distribute and sell supplements, including Vysera, and it further created Bremenn as a limited liability company specifically to market and sell Vysera. ¶¶ 18-20. Some of these sales were made through third parties such as Ulta, Kohl's, GNC and Boscov's, while other sales were made directly through their websites, Vysera.com and BremennClinical.com. ¶ 58. Thus, Defendants Basic Research and Bremenn directly benefited from sales of Vysera. With regard to the Individual Defendants, Plaintiff alleged that at relevant times Gay controlled Basic and Bremenn for his personal benefit and was the principal shareholder of both. ¶¶ 24 and 30. Friedlander receives royalty payments from Basic for each sale of the products marketed by Basic pursuant to a 1993 royalty agreement with the company (¶ 36), and Strobel was compensated for her false endorsements and advertising of Vysera through her blog MyFreeDiet.com as well as print ads she authored for several national magazines and on

vyseracls.com. ¶¶ 42-44. Accordingly, each of the Defendants has received a financial benefit

from Plaintiff's and the Class Members' purchases of Vysera and were unjustly enriched by their

participation in the alleged false advertising scheme.

      3.    <u>Plaintiff's Unjust Enrichment claim is plead in the alternative and should not be dismissed at the pleading stage</u>

This Court previously denied Defendants' motion to dismiss an unjust enrichment claim

in *Miller v. Basic Research*, as not ripe on a motion to dismiss. Acknowledging the plaintiff had

plead unjust enrichment in the alternative to other legal remedies, the Court held "Plaintiffs are

currently pursuing legal claims against Defendants, but the question of whether pursuing those

legal claims will be fruitless is not yet determined." *See Miller*, 2008 U.S. Dist. LEXIS 87655,

at *27. *See also Canon*, 2006 U.S. Dist. LEXIS 43223, at *7 ("although plaintiffs may not

ultimately recover under both their legal and equitable theories, they may plead both claims in

the alternative."). The same result should prevail here.

## CONCLUSION

For the reasons set forth above and those reasons set forth in Plaintiff's Opposition to

Defendants' Motion to Dismiss For Lack of Standing and Motion to Dismiss Plaintiff's

Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 8 and 9(b), Plaintiff requests that

Defendants' motion be denied.[8]

---

[8] If the Court determines that Plaintiff's allegations are insufficient in some way, Plaintiff respectfully requests the right to amend, which relief should be freely granted. *See e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arnett v. Howard*, No. 2:13-CV-591, 2014 U.S. Dist. LEXIS 38633, at * 23-24 (D. Utah, March 21, 2014).

RESPECTFULLY SUBMITTED this 19th day of December, 2016.

GOEBEL ANDERSON PC


*/s/ Timothy J. Curtis*
Heidi G. Goebel
Timothy J. Curtis
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2016, I electronically filed the within **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned case, including:

Christopher B. Sullivan
David R Parkinson
Jason M. Kerr
Ronald F. Price
PRICE PARKINSON & KERR PLLC
5742 W. Harold Gatty Drive
Salt Lake City, UT 84116
sullivan@ppktrial.com
davidparkinson@ppktrial.com
jasonkerr@ppktrial.com
ronprice@ppktrial.com

*/s/ Karen Harwood*