IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADELAIDE SPENCE,<br><br>                Plaintiff,<br><br>v.<br><br>BASIC RESEARCH; BREMENN RESEARCH LABS; MITCHELL K. FRIEDLANDER; DENNIS GAY; and TIFFANY STROBEL,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:16-cv-925-CW<br><br>District Judge Judge Clark Waddoups |

Before the court are Defendants' motions to dismiss pursuant to Federal Rules of Procedure 9(b), 12(b)(1), and 12(b)(6) (Dkt. Nos. 68, 69, & 70), and Plaintiff's motion to strike or exclude evidence improperly submitted in Defendants' motions (Dkt. No. 80). Defendants' motions assert that the court lacks subject matter jurisdiction over each of the individual defendants and over the warranty claims, except as to Bremenn Research Labs; that Plaintiff has not pled a claim upon which relief can be granted because she failed to plead the fraud-based claims with particularity; and that Plaintiff has not pled facts that, when accepted as true, satisfy the elements of each of her claims. The court held oral argument on the motions on May 18, 2017. Regarding Defendants' motions, after careful consideration of the arguments the parties set forth in their briefs and oral argument and for the reasons set forth below, the court now GRANTS in part and DENIES in part the standing motion and GRANTS Defendants' other motions. Regarding Plaintiff's motion, the court has taken it under advisement and excluded improper evidence in reaching the conclusions herein.

## BACKGROUND[1]

Plaintiff Adelaide Spence brings this purported class-action lawsuit to compensate damages she and other members of the purported class suffered because of false and fraudulent advertising of the dietary supplement Vysera-CLS. (Dkt. No. 64.) Plaintiff contends that Defendants advertised a pill that would promote significant weight loss through the malabsorption of calories when Defendants knew that was scientifically impossible.

Plaintiff purchased Vysera-CLS on March 19, 2015 for $84.99 from a GNC in New York after having reviewed advertisements on the internet for the supplement. The advertisements she reviewed claimed Vysera-CLS is a "miracle pill" and "the amazing Cupcake Diet." They further stated that Vysera-CLS could help "reshape your entire body in 30 days" and promised that results would be achieved "without requiring anybody to follow a low-calorie diet or work out for hours every day!" She also contends that the advertisements claimed the results are supported by "groundbreaking research" published in the *British Journal of Nutrition*, but that no such study has been published. After taking Vysera-CLS as directed on the product label, Plaintiff failed to lose any weight. She relied upon the advertisements she saw and would not have purchased the supplement if she had known that it was not effective and "would not cause her to lose weight without modifying her diet and without exercise." Plaintiff does not point to a specific advertisement that she relied upon, but she does quote other print and web advertisements for Vysera-CLS that claim the supplement can reshape one's body within thirty

---

[1] The following is an overview of the facts as set forth in the Amended Complaint. (Dkt. No. 64.) The facts are recited from the complaint on a motion to dismiss, but the court makes no findings of facts as to such allegations. More detailed discussion of certain facts appear in the analysis section.

days when the person consumes 2000 to 2200 calories per day and without requiring hours daily of exercise.

Vysera-CLS is produced and marketed by Bremenn Research Labs, LLC, a subsidiary of Basic Research, LLC. Basic Research is a multimillion-dollar nutraceutical company that "develops, manufactures, promotes, markets, distributes, and sells scores of cosmetics, nutritional supplements, and dietary supplements" based in Salt Lake City, Utah. The individual defendants were employees of Basic Research and were involved in its subsidiary LLCs, including Bremenn. Specifically, defendants Gay and Friedlander directed the marketing of Basic Research's products, including "labeling, advertising, and media placement for Vysera-CLS and other dietary supplements." Defendant Strobel maintained a blog, MyFreeDiet.com, where she posted advertising content for Vysera-CLS. She also wrote advertisements that were published in other locations.

Basic Research, Gay, and Friedlander are subject to a permanent injunction and Consent Decree with the Federal Trade Commission, which prohibits them from marketing and selling dietary supplements unless the claims regarding the supplements are supported by "competent and reliable scientific evidence." On December 17, 2013, the National Advertising Division of the Council of Better Business Bureaus referred Vysera-CLS advertisements to the FTC in light of the permanent injunction. Plaintiff makes no claims that the FTC ever took any action against Defendants related to Vysera-CLS.

Plaintiff supports her conclusion that the Vysera-CLS advertisements were fraudulent by citing a 2003 study by the FTC that concluded malabsorption of calories can only account for approximately one-third of a pound of weight loss each week. She also cites several studies

discrediting the effectiveness of *P. vulgaris*, which is listed as one of Vysera-CLS's "proprietary weight control component[s]." The studies date from 1982, 2004, 2011, and 2014. Plaintiff does not contend that *P. vulgaris* is the active ingredient or provide studies discrediting other compounds at work in Vysera-CLS.

Upon these and other representations, Plaintiff alleges Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act, the Utah Pattern of Unlawful Activity Act, the Magnuson-Moss Warranty Act, and the Utah Consumer Sales Practices Act and constituted a breach of express warranty and unjust enrichment. Defendants now seek to have each claim dismissed.

## ANALYSIS

I.      Standing 12(b)(1)[2]

### a. Individual Defendants

Defendants first seek dismissal of each Individual Defendant from the action under Federal Rule of Civil Procedure 12(b)(1), claiming that the court lacks subject matter jurisdiction over the Individual Defendants. (Dkt. No. 69.) Defendants argue the court does not have jurisdiction because Plaintiff lacks standing to pursue her claims when the Individual Defendants did not cause her alleged injuries. The jurisdiction of the federal courts extends only to such actions that present a justiciable case or controversy. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For an action to present a justiciable case or controversy, the plaintiff must have standing to pursue it. *Id.* A plaintiff has standing if she demonstrates (1) that she "suffered an 'injury in fact'"; (2) that "a causal connection [exists] between the injury

---

[2] Facts relevant to standing are drawn from the Amended Complaint as well as declarations submitted by Defendants.

and the conduct complained of"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.'" *Id.* at 560–61 (citations and internal quotation marks omitted). This burden is not diminished here by the fact that Plaintiff purports to bring a class action suit; she must show that she was personally injured by these defendants and not simply that some other, unidentified class members were injured. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (alteration in the original); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (concluding that "the existence of record evidence of" the defendant's "direct involvement" in the conduct from which the plaintiff's injury arose was sufficient to show causation for standing purposes). The Tenth Circuit Court of Appeals has determined this amounts to a "considerably" reduced burden. *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012); *see also Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("Rather, 'at [the pleading] stage of the litigation,' the plaintiffs' 'burden . . . of alleging their

injury is "fairly traceable" to' the challenged act 'is relatively modest.'" (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)) (alterations in the original)).

At issue here is whether Plaintiff has satisfied the causation requirement. That is, whether she has shown her alleged injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 41–42) (alterations in the original). A fairly traceable connection must be more than "an attenuated connection," *Robbins v. U.S. Dep't of Housing and Urban Dev.*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014), but need not rise to the level of proximate cause, *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (citing *Focus on the Family*, 344 F.3d at 1273), and may include "harms that flow indirectly from the action in question," *Focus on the Family*, 344 F.3d at 1273. While at least the Third Circuit has gone so far as to say the causation requirement is "akin to 'but for' causation," *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, (3rd Cir. 2013), the Tenth Circuit has stopped short of that, saying only that "Article III does at least require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156.

The Individual Defendants argue that Plaintiff lacks standing to bring her claims against them because they were no longer employees of Bremenn Research Labs by the time that she viewed the relevant advertisements and purchased Vysera-CLS from GNC on March 29, 2015. Each Individual Defendant has represented to the court by declaration that he or she left Bremenn in November of 2014 when a majority interest in Basic Research was sold to a third party and an independent board was installed. (Dkt. No. 69, p. 3 and Exhibits A-C.) Defendants

allege that because Plaintiff purchased Vysera-CLS after they left Bremenn, has not alleged that she relied on any statement specifically made by any of the Individual Defendants, and names the Individual Defendants based on actions they purportedly took while they still worked for Basic Research and Bremenn, their liability was cutoff when they left the company. (Dkt. No. 69, p. 3.) That argument depends upon a stricter standard of causation than is required for standing.

Defendant Tiffany Strobel worked on behalf of Basic Research and Bremenn until sometime in November 2014. (Dkt. No. 69, Exhibit C.) She served as a writer and a fitness consultant. (Dkt. No. 69, p. 5.) Through a blog, MyFreeDiet.com, Strobel endorsed and advertised Vysera-CLS. She is also an attributed author of Vysera-CLS advertisements, including those used in a national ad campaign and on Vysera- CLS's own website. (Dkt. No. 64, p. 14., Exhibits A & E.) Some Vysera-CLS advertisements do not include Strobel's name but are materially similar to those bearing Strobel's name such that it is reasonable to conclude she drafted, or participated in the drafting of, those advertisements as well. Accepting Strobel's own statements and Plaintiff's allegations as true and drawing all inferences in favor of Plaintiff, it is apparent that Strobel was involved in crafting the advertisements that Spence reviewed before purchasing Vysera-CLS in March 2015. The fact that Strobel was not employed by Bremenn or Basic Research at the time Spence bought Vysera-CLS does not change the fact that Spence reviewed Strobel's work product before deciding to purchase Vysera-CLS and attributes her purchase to those advertisements. This is sufficient to satisfy the relatively low burden of causation for standing, which is further reduced when the court is limited to the pleadings in reaching its determination.

Defendant Mitchell K. Friedlander also provided services to Basic Research and Bremenn until November 2014. (Dkt. No. 69, p. 5.) He led the advertising team for Basic Research and its affiliated companies, including Bremenn. Like Strobel, his employment ended in November 2014. (Dkt. No. 69, Exhibit B.) While working for Basic Research and Bremenn, Friedlander described himself as Basic Research's "marketing guru." He has also been credited as the "idea man" behind other dietary supplement advertising campaigns for Basic Research. (Dkt. No. 64, p. 11.) Plaintiff further alleges that Friedlander continues to serve as a marketing consultant who "is directly involved in the development, manufacture, endorsement, advertising, marketing, and promotion of Basic Research products, including Vysera-CLS." She contends that he had "primary responsibility for the design, content, approval, distribution, and publication" of the advertisements for Vysera-CLS, including those that Plaintiff saw and that led her to purchase the supplement. Thus, Friedlander had the ability to govern the content and placement of the advertisements, meaning the advertisements Plaintiff viewed and relied upon were fairly traceable to him.

Defendant Dennis Gay served Basic Research and Bremenn as CEO until November 2014. (Dkt. No. 69, Exhibit A.) He "formulated, directed, controlled, or participated in the acts and business practices" that Plaintiff alleges led her to purchase Vysera-CLS, including the advertisements. (Dkt. No. 64, p. 9.) He "exercised final decision-making authority" and had personal responsibility for "design, content, approval, distribution, and publication of all Vysera-CLS labeling and advertisements." He was directly involved in the creation of the advertisements Plaintiff relied upon in determining to buy Vysera-CLS. Thus, Plaintiff has exceeded the low bar for causation at the pleadings stage and shown that standing is proper as to Gay. She has standing

to pursue her claims against each of the individual defendants, and Defendants' 12(b)(1) motion is DENIED as to the Individual Defendants.

b.  *Magnuson-Moss Warranty Act*

All defendants other than Bremenn argue for the dismissal of the Magnuson-Moss Warranty Act claim because there was no privity of contract between those defendants and Spence and privity is a standing requirement for breach of warranty claims according to relevant state law.[3] Where a Magnuson-Moss violation results from an alleged state breach of warranty, as is the case here, the plaintiff must show the state law cause of action can be proved. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 & n.3 (9th Cir. 2008); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004); *see also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) (determining that state law governs whether lack of privity is a defense to a Magnuson-Moss Warranty Act claim). Here there is a question of whether New York or Utah law should govern Spence's Magnuson-Moss Warranty Act claim, but the court need not decide that issue now as New York and Utah law are consistent with one another on the issue of standing for a breach of warranty claim. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1224 (10th Cir. 2000) ("[C]ourts routinely decline to consider choice of law issues in the absence of a demonstrated conflict.").

Both New York and Utah law require privity of contract between plaintiff and defendant except when defendant is the manufacturer and the warranty was made in advertisements or

---

[3] Plaintiff's complaint also raises a state law breach of express warranty claim, but she voluntarily dismisses that claim because she has not satisfied a mandatory pre-suit notice requirement. (Dkt. No. 79, p. 17 n.7.) Because Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to withdraw a claim prior to the filing of an answer or motion for summary judgment, the court does not now consider that claim and notes that it is dismissed without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B).

packaging produced by the manufacturer. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (listing the elements of a breach of express warranty under New York law as "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of warranty, and (4) injury to the buyer caused by the breach," but acknowledging that New York law permits a breach of warranty claim against a manufacturer who "made express representations to induce reliance by remote purchasers" despite a lack of privity); *SME Industries, Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.*, 28 P.3d 669, 676 (Utah 2001) (noting that an express warranty involves a contract between the parties, as a warranty "is an assurance by one party to a contract of the existence of a fact upon which the other party can rely (quoting *Groen v. Tri-O-Inc.*, 667 P.2d 598, 604 (Utah 1983)). While both New York and Utah law permit suit against a manufacturer where the manufacturer was not a party to the contact, *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405 (N.Y. App. Div. 2008); *State ex rel. Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 315 (Utah 1988), only defendant Bremenn is a manufacturer subject to that exception. And Plaintiff had no agreement with anyone other than GNC, who is not a party to this action. Thus, Plaintiff was not in privity with the Individual Defendants or Basic Research, they could not have caused her injury, and she does not have standing to bring this claim against them. Defendants' motion is GRANTED, and Plaintiff's Magnuson-Moss Warranty Act claim is DISMISSED with prejudice against all Defendants other than Bremenn because the court lacks jurisdiction over it.

## II.     12(b)(6)

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ordinarily "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the claims for relief are based, however, on a theory of fraud, as is the case in this action, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When considering a motion to dismiss, the court accepts "'[a]ll well-pleaded facts, as distinguished from conclusory allegations, . . . as true,'" "view[s] all reasonable inferences in favor of the plaintiff," and "liberally construe[s]" the pleadings. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)).

### a.  Unjust Enrichment

Plaintiff's Amended Complaint sets out a claim for unjust enrichment, alleging that because of Defendants' "deceptive marketing," Defendants have received a benefit at the expense of Plaintiff and proposed Class Members "that would be unjust for Defendants to retain." (Dkt. No. 64, p. 50.) To recover on a theory of unjust enrichment, a plaintiff must adequately plead three elements: (1) "a benefit conferred on one person by another person," (2) "the conferee . . . appreciate[d] or ha[d] knowledge of the benefit," and (3) "the conferee" accepted "the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B& L Auto, Inc.*, 12 P.3d

580, 582 (Utah 2000). And it is established law in both New York and Utah that there can be no relief in equity for unjust enrichment when the benefit was conferred pursuant to a valid contract. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded."); *Selvig v. Blockbuster Enters., LC*, 266 P.3d 691, 698 (Utah 2011) ("[W]here an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." (citation and quotation marks omitted)). Thus, Plaintiff must plead some benefit other than that which resulted from a valid contract.

Plaintiff's unjust enrichment claim states, "[a]s a result of Defendants' misconduct in the form of deceptive marketing of Vysera-CLS as set forth above, Defendants have received a benefit at the expense of Plaintiff and proposed Class Members that would be unjust for Defendants to retain." (Dkt. No. 64, p. 50.) At oral argument, Plaintiff's counsel characterized this benefit as the revenue Defendants gained as a result of Plaintiff's purchase, and the purchase of each potential class member. This fails to set out a benefit other than Plaintiff's purchase of Vysera-CLS, which was pursuant to her purchase contract with GNC, and fails to demonstrate how that benefit extends to the defendants. Plaintiff has not pled any facts about the relationship between GNC and the Defendants upon which the court can rely in concluding that the money from retail sales ultimately returned to Defendants. Rather she simply states that she purchased the Vysera-CLS on March 29, 2015 from GNC and received a thirty-day supply in exchange for $84.99. (Dkt. No. 64, p. 6 ¶ 16.) Further, any revenue Defendants earned from the sale was a result of Plaintiff's contract with GNC, which precludes the possibility of an unjust enrichment

claim, and she has pled no facts that would establish a separate benefit that she conferred upon Defendants. Finally, it is a logical inference that GNC would have purchased the product from Bremenn pursuant to a contract to which Plaintiff is not a party or third-party beneficiary. Unjust enrichment does not create a right for nonparty consumers to enforce the obligations of the usual retailer-supplier contracts. Thus, Plaintiff has failed to show a benefit was conferred.

Plaintiff also has not shown that defendants appreciated the benefit she personally conferred. She has not alleged that any Defendant was aware of her purchase or the revenue it generated for Basic Research or Bremenn. Without demonstrating that the parties appreciated any benefit she may have conferred, Plaintiff cannot prove a cause of action for unjust enrichment.

Nevertheless, Plaintiff argues that her unjust enrichment claim should survive the motions to dismiss because it is pled in the alternative. In support of her claim, Plaintiff cites *Miller v. Basic Research*, in which the court concluded consideration the unjust enrichment claim was not ripe on a motion to dismiss. *Miller v. Basic Research, Inc.*, No. 2:07-cv-871, 2008 U.S. Dist. LEXIS 87655 (D. Utah Oct. 27, 2008). In *Miller*, the defendant argued for dismissal of the unjust enrichment claim on a theory that an equitable remedy such as unjust enrichment is not available when there is an adequate remedy at law. *Id.* at *26–*27. The court declined to dismiss the claim on a motion to dismiss because "the question of whether pursuing . . . legal [remedies] w[ould] be fruitless [wa]s not yet determined." *Id.* at *27. But in *Miller* the court first concluded that plaintiff had pled sufficient facts to satisfy the elements of unjust enrichment. *Id.* at * 26. Here, because she has not shown she could prove a claim of unjust enrichment, even taking all alleged facts as true and drawing all inferences in her favor, Plaintiff is not entitled to

the same outcome as in *Miller*. Deferring consideration of the adequacy of Plaintiff's unjust

enrichment claim until summary judgment or trial would have the same outcome but only after

considerable expenses accrued.  Therefore, Spence's unjust enrichment claim is DISMISSED

with prejudice.

       *b.  Fraud-based Claims*

Spence's remaining claims are fraud based and require a heightened level of pleading.

Pursuant to Federal Rule of Civil Procedure 9(b), a party "alleging fraud or mistake . . . must

state with particularity the circumstances constituting fraud or mistake." This heightened

pleading requirement's purpose is "to afford defendant fair notice of plaintiff's claims and the

factual ground upon which [they] are based." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d

1246, 1252 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir.

1992)) (alteration in original). The requirement is met where the complaint "set[s] forth the time,

place and contents of the false representation, the identity of the party making the false

statements and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*,

924 F.2d 176, 180 (10th Cir. 1991).

       i.  UCSPA

Plaintiff alleges that Defendants violated the Utah Consumer Sales Practices Act by

engaging in "intentionally and willfully false, misleading, and fraudulent" activities when

marketing, advertising, and promoting Vysera-CLS. And while she points to various Vysera-

CLS advertisements, she does not identify which advertisement she relied upon or when she saw

the advertisement. She says instead that she saw the advertisement on the internet sometime

between the time the United States Patent and Trademark Office listed an application for the

trademark "Vysera-CLS" on March 14, 2013 and the date she purchased the supplement on

March 29, 2015. (Dkt. No. 64, pp. 6 & 20.) The Utah Consumer Sales Practice Act provides a

cause of action against a "'seller' who commits either a 'deceptive' or an 'unconscionable' 'act

or practice . . . in connection with a consumer transaction . . . whether it occurs before, during, or

after the transaction." *Estrada v. Mendoza*, 275 P.3d 1024, 1027 (Utah Ct. App. 2012) (quoting

Utah Code Ann. §§ 13-11-4(1), -5(1)). Although UCSPA does not necessarily require fraudulent

conduct, here Plaintiff alleges the actionable conduct was fraudulent. But from the pleadings, it

is not apparent which act or practice is connected to Plaintiff's transaction and therefore the

Amended Complaint is inadequate.[4]

### ii. RICO and UPUAA Claims

To prove a RICO claim under § 1962(c), as Plaintiff has alleged, she must show that the

alleged "person[s]" "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016);

*see also* 18 U.S.C. § 1962(c). In order to show a pattern of racketeering activity, Plaintiff "must

allege at least two predicate acts" that are related and show a "threat of continuing activity." *Id.*

at 1254. These acts must be pled with particularity. *Id.* For each RICO claim, Plaintiff alleges

that the relevant persons committed mail fraud, wire fraud, and interstate transportation of

money taken by fraud pursuant to 18 U.S.C. § 2314. The Amended Complaint contains no

allegation that 18 U.S.C. § 2314 has been satisfied other than the conclusory statement that the

---

[4] During oral argument, Plaintiff's counsel argued that the pleading standard under rule 9(b) is reduced when defendants control the factual information and that such are the circumstances in this case. While counsel's statement of the law reflects Tenth Circuit precedent, *see, e.g.*, *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016), the rule is inapposite in this case where Plaintiff's pleadings are inadequate with regard to what Spence saw, when she saw it, and where she saw it.

value of the money allegedly "transported, transmitted, or transferred" is $5,000. In order to prove such a claim, Plaintiff must include allegations to support that sum. Therefore, she has not adequately pled 18 U.S.C. § 2314 violation(s), leaving only mail and wire fraud allegations to potentially show a pattern. She claims that each advertisement constitutes either mail or wire fraud, depending on how it was distributed. But Plaintiff has not identified who, when, and where related to those advertisements. It remains ambiguous which of the two years' worth of advertisements she is claiming are fraudulent. This is inadequate, especially because RICO subjects a defendant to treble damages. As such Plaintiff's RICO claims are DISMISSED without prejudice. Her state claims are also DISMISSED without prejudice for the same reasons.[5]

## CONCLUSION

In sum, Defendants' standing motion is DENIED as to Individual Defendants, but GRANTED as to the Magnuson-Moss claim (Dkt. No. 69); the rule 9(b) motion is GRANTED as to the fraud claims (Dkt. No.68.); and the rule 12(b)(6) motion is GRANTED (Dkt. No. 70). Plaintiff's Magnuson-Moss Warranty Act, except as to Bremenn, and unjust enrichment, as to all Defendants, claims are dismissed with prejudice. All other claims are dismissed without prejudice, including the state breach of contract claim pursuant to Plaintiff's voluntary dismissal. To the extent evidence was improperly submitted in Defendants' motions, the court took Plaintiff's motion under advisement and excluded such evidence in reaching the conclusions herein. As such, Plaintiff's motion should be terminated. (Dkt. No. 80.)

---

[5] Because of these failures to adequately plead the fraud based claims, the court need not reach whether Plaintiff has adequately pled the other required elements for her RICO or UPUAA claims. If Plaintiff elects to seek leave to file an amended complaint, she should carefully address each the of required elements in light of the objections raised in the Defendant's motion to dismiss.

DATED this 31st day of May, 2017.


BY THE COURT:

_____

Clark Waddoups
United States District Judge