IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADELAIDE SPENCE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BASIC RESEARCH; BREMENN RESEARCH LABS; MITCHELL K. FRIEDLANDER; DENNIS GAY; and TIFFANY STROBEL,<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION & ORDER**<br><br><br>Case No. 2:16-cv-925-CW<br><br>Judge Clark Waddoups |

Before the court is Plaintiff Adelaide Spence's "Motion for Leave to File an Amended Complaint." (Mtn. to Amend, ECF No. 102.) The Motion follows the court's dismissal of multiple counts from the First Amended Complaint (FAC),[1] some with and some without prejudice. (Order on Mtn. to Dismiss, ECF No. 99.) The proposed Second Amended Complaint (SAC) drops the claims dismissed with prejudice and attempts to cure the deficiencies in those dismissed without prejudice. The court held a hearing on the Motion on November 30, 2017. (ECF No. 108.) Having carefully considered the arguments set forth in the briefs and oral arguments, and for the reasons stated herein, the court now DENIES Spence's Motion and DISMISSES this action with prejudice.

---

[1] The FAC was intended only to bring the Complaint into compliance with the District of Utah's local rules after the case was transferred from the Southern District of New York. (Mtn. to Amend 2, ECF No. 102.) It "did not add any new parties or causes of action and made only minor adjustments to the facts alleged to incorporate information submitted by [the Individual Defendants] in connection with their motion to transfer." (*Id.*)

## BACKGROUND

The facts as alleged in the FAC are set forth in the court's May 31, 2017 order. (Order on Mtn. to Dismiss, ECF No. 99.) After the court entered its order, in which it dismissed Spence's claims, Spence timely sought leave to amend. (Mtn. to Amend, ECF No. 102.) The Motion alleges that the SAC cures the deficiencies "by adding factual allegations that provide more specificity" regarding the allegedly false and misleading advertisements that she relied upon in purchasing Vysera-CLS. (*Id.* at 5.) She alleges the impossibility of the advertisements' promises, the ineffectiveness of *P. Vulgaris*, and the lack of supporting science for Vysera-CLS. (*Id.* 5–6.) Defendants object to amendment, claiming it would be futile. (Defendants' Resp. Brief 3, ECF No. 103.)

## STANDARD

Federal Rule of Civil Procedure 15(a) permits amendment after service of responsive pleadings only upon leave from the court. Fed. R. Civ. P. 15(a). It instructs the court to "freely give[]" leave "when justice so requires." *Id.* "'Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). The lenient amendment standard exists "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)). Nevertheless, "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the

discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Here, Defendants object to leave only on the basis of futility, and it appears that there is no other basis for denying leave to amend.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Ordinarily "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must identify a basis for plaintiff's claim for relief, which "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Where the claims for relief are based, however, on a theory of fraud, as is the case in this action, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

When considering a motion to dismiss, the court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. It must also "view all reasonable inferences in favor of the plaintiff" and "liberally construe" the pleadings. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)). Applying these standards, the court considers each cause of action that Spence has alleged in the SAC.

## ANALYSIS

**1. Fraud-Based Claims**

Spence alleges two fraud-based claims, which require a heightened level of pleading. The court previously dismissed all of Spence's fraud-based claims under Federal Rules of Procedure 9(b) and 12(b)(6) because Spence failed to plead with the particularity necessary to support fraud-based claims. Pursuant to Federal Rule of Civil Procedure 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." This heightened pleading requirement exists "'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (alteration in original) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)). The particularity requirement is met where the complaint "set[s] forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991).

*a. RICO*

The SAC alleges RICO violations under 18 U.S.C. §§ 1962(c) and (d). Under § 1962(c), Spence must allege that "person[s]" "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity," *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). And § 1962(d) requires proof of a conspiracy to commit the aforementioned. RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Defendants "conduct[] the affairs" of a RICO enterprise by "participat[ing] in the operation or management of the RICO enterprise."

*Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1541 (10th Cir. 1993) (citing *Reves v. Ernst & Young*, 507 U.S. 170 (1993)). And an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Spence alleges that Defendants Basic Research, Bremenn, Gay, Friedlander, and Strobel are all persons involved in an association-in-fact enterprise comprised of the same individuals and entities. (SAC, ¶¶ 89& 91, ECF No. 102-1.) But "the 'person' conducting the enterprise's affairs [must] be distinct from the 'enterprise.'" *George*, 833 F.3d at 1249 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)). It is insufficient to identify "simply the group of . . . defendants accused of engaging in the racketeering" as the enterprise. *Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2011). The Tenth Circuit Court of Appeals has said that the distinction requirement means that the "person" and "enterprise" must "be different entities," *Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885 (10th Cir. 1992), and that a plaintiff must plead "that the defendant conducted the affairs of the enterprise rather than simply conducting the defendant's own affairs," *George*, 833 F.3d at 1249. While the United States Supreme Court has held that a "corporate owner/employee, a natural person, is" sufficiently "distinct from the corporation itself," *Cedric Kushner*, 533 U.S. at 163, the Court "explicitly disclaimed deciding the 'quite different' issue, arising in this case, where the defendant 'person' is a corporation and is alleged to have engaged in an enterprise with its officers, employees, and agents." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1356 (11th Cir. 2016).

An association-in-fact enterprise may exist when "separate legal entities . . . join[] together" to conduct "the enterprise's affairs, rather than [their] own affairs." *George*, 833 F.3d

at 1250. In *George v. Urban Settlement Services*, the Tenth Circuit was satisfied that the plaintiff had adequately pled an association-in-fact enterprise where a bank and a "mortgage solutions provider" worked together to "obstruct and delay borrowers' [applications]" for a program aimed at providing relief for homeowners during the housing crisis that began in 2008. *Id.* at 1246–47, 1250–51. In reaching this conclusion, the Court was persuaded that the bank and mortgage solutions provider were "functioning separately," "perform[ing] distinct roles," and acting in conjunction to "enhance[] the enterprise's ability to thrive and avoid detection." *Id.* at 1250. It found the facts to be sufficiently similar to RICO cases in which separate corporations worked in conjunction, using their distinct lines of business, to further a common but distinct purpose. *See id.*

In contrast, the Tenth Circuit has concluded that no enterprise exists when the persons and enterprise alleged were by all appearances the same. In *Switzer*, the Tenth Circuit affirmed dismissal of a complaint in which the plaintiff pled an association-in-fact enterprise comprised of the same group of individuals he identified as the RICO persons. *See* 261 F.3d at 992. The Court's analysis was limited to the simple fact that "the 'enterprise' [the plaintiff] specified in the complaint [was] simply the group of individual defendants accused of engaging in racketeering." *Id.* In *Board of Commissioners of San Juan County v. Liberty Group*, the Tenth Circuit held that there was no association-in-fact enterprise where a partnership, its partners, and its successor in interest as well as individuals associated with those entities committed various SEC violations in managing the plaintiff's investments. 965 F.2d at 881. The Court reasoned that because "[a] legal entity . . . can perform an action or make a decision only through human

6

intermediaries, . . . the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Id.*

Spence alleges an identical group as persons and enterprise, just as the *Switzer* Court expressly rejected. And as in *San Juan County*, the enterprise she has alleged amounts only to a legal entity acting through its employees. The SAC alleges that Basic Research is a nutraceutical company that "use[es] a web of limited liability companies" for the various phases of its business, including Bremenn Research Labs, LLC. (SAC ¶ 15, ECF No. 102-1.) Bremenn is a limited liability company "created for the sole purpose of advertising, marketing and selling . . . products developed by the Defendants, including Vysera-CLS." (*Id.* ¶ 16.) And at all relevant times the Individual Defendants were working on behalf of Basic Research as CEO (Gay), "marketing guru" and "idea man" (Friedlander), and advertisement writer (Strobel). (*Id.* ¶¶ 19, 29, 39.) Spence alleges the Individual Defendants were all acting in conjunction, according to their regular duties, to further the ordinary business of Basic Research—"develop[ing], manufactur[ing], promot[ing], market[ing], distribut[ing], and sell[ing] scores of cosmetics, nutritional supplements, and dietary supplements. (*Id.* ¶ 15.) That does not amount to an association-in-fact enterprise. Instead, it is a corporation doing business through officers and employees who were conducting their ordinary duties.[2]

Even if Spence had adequately pled an enterprise, amendment would be futile because she has not pled the "racketeering activity" with the specificity Rule 9(b) requires. In order to

---

[2] The fact that Spence alleges that Basic Research and Bremenn were actually subservient to Gay, (*id.* ¶ 23), does not change the analysis. While RICO claims can arise where an individual takes over an otherwise legitimate business to further his or her racketeering, *see Ray*, 836 F.3d at 1357, Spence has not pled facts demonstrating such control. And by pleading Basic Research and Bremenn as persons participating engaged in the racketeering behavior, she undermines any claim that they are innocent of the alleged fraudulent conduct.

show a pattern of racketeering activity, a complaint "must allege at least two predicate acts" that are related and that show a "threat of continuing activity." *George*, 833 F.3d at 1254. The complaint must set for these acts with particularity, *id.*, including "time, place and contents of the false representation" as well as the identity of the person making the representation, *In re Edmonds*, 924 F.2d at 180. In *Koch v. Koch Industries, Inc.*, the Tenth Circuit found the allegations in the complaint inadequate. 203 F.3d 1202, 1237 (10th Cir. 2000). In *Koch*, the relevant allegations were "broad," encompassed in a single paragraph, and "set forth none of the specific and required allegations." *Id.* The complaint characterized the relevant time period as "during 1982 and continuing to the present," in 1985. *Id.* at 1236–37. The *Koch* Court concluded this did not "alert the [d]efendants to a sufficiently precise time frame to satisfy Rule 9(b)." *Id.* at 1237. The site of the alleged misrepresentations was not "mention[ed] at all," and the complaint was similarly silent about their content. *Id.* Finally, the complaint "failed to identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions, a particularly important requirement in this case because of the number of individual defendants involved." *Id.*

While Spence uses many paragraphs to make her claims and pleads more information on some of the categories than were present in *Koch*, the SAC is similar to *Koch* in two key ways. First, Spence also identifies a long and indefinite window of time, suggesting that the events comprising the pattern extend from the issuance of the patent in March 2013 until Gay and Friedlander ceased their relationship with Basic Research in November 2014. (SAC ¶¶ 50, 93). Contradictorily, she also asserts that the allegedly fraudulent advertising continues to the present day (*Id.* ¶ 50.) This indefinite window of time represents the entire history of Vysera-CLS, and it

8

remains ambiguous which of the two years' worth of advertisements she is claiming are fraudulent.

Second, as in *Koch*, Spence fails to specify the roles of the specific individuals in the fraudulent activity. Instead she makes the conclusory statement that at the relevant time "all Defendants were operating as distinct elements of an enterprise." (*Id.* ¶ 93.) She continues that "Defendants Gay and Friedlander . . . have conducted or participated, directly or indirectly, in the management and operation of an 'enterprise' . . . through a pattern of racketeering activity" and that the other defendants "have conspired" to do the same. (*Id.* ¶¶ 100–01.) These statements are conclusory and cannot form the basis of an adequate complaint. *Twombly*, 550 U.S. at 555. Spence also claims that Gay was "personally responsible for the design, content, approval, distribution, and publication of all Vysera-CLS labeling and advertisements" and that he "was ultimately responsible for placing the advertisements for . . . Vysera-CLS[] into the stream of commerce and for selling the products in interstate commerce." (*Id.* ¶¶ 21–22.) But she contradicts herself a few paragraphs later when she alleges that Friedlander "had primary responsibility for the design, content, approval, distribution, and publication of Defendants' advertisements, including the Vysera-CLS advertisements." (*Id.* ¶ 30.) She is more specific with regard to Strobel, who she calls the "author" of the Vysera-CLS ads. (*Id.* ¶ 39.) But on the whole, the SAC simply conveys that Spence believes each of the alleged members of the alleged enterprise were somehow involved. It does not provide Defendants sufficient notice of her theory of the case such that they could defend against her claims. Therefore, her pleading of the pattern is inadequate under Rule 9(b) and amendment would be futile.

Because the SAC, like the FAC, fails to allege facts demonstrating a RICO vioaltion, the SAC would not survive a claim for dismissal under Rules 9(b) or 12(b)(6). Therefore, amendment would be futile.

  b. *UCSPA*

Plaintiff also alleges that Defendants violated the Utah Consumer Sales Practices Act by engaging in "intentionally and willfully false, misleading, and fraudulent" activities when marketing, advertising, and promoting Vysera-CLS. The Utah Consumer Sales Practice Act provides a cause of action against a "'seller' who commits either a 'deceptive' or an 'unconscionable' 'act or practice . . . in connection with a consumer transaction . . . whether it occurs before, during, or after the transaction." *Estrada v. Mendoza*, 275 P.3d 1024, 1027 (Utah Ct. App. 2012) (quoting Utah Code Ann. §§ 13-11-4(1), -5(1)). Although UCSPA does not necessarily require fraudulent conduct, here Spence alleges the actionable conduct was fraudulent; therefore she must satisfy Rule 9(b). (*Id.* ¶ 115.) As the court has already concluded, her factual allegations fail to set for the particular "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *In re Edmonds*, 924 F.2d at 180. Thus, amendment of her UCSPA claim would also be futile.

  **2. Warranty Claims**

Spence alleges two separate breach of warranty claims: (1) common law breach of express warranty claim and (2) violation of the Magnuson-Moss Warranty Act (MMWA), which she concedes "stand or fall together." *Brady v. Basic Research, LLC*, 101 F. Supp. 3d 217, 234 (E.D. N.Y. 2015). Both claims are subject to dismissal, and amendment to incorporate them

would therefore be futile, because Spence has not alleged an adequately specified "warranty." Courts have held that the MMWA "merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." *Ebin v. Kangadis Food Inc.*, Case No. 13 Civ. 2311(JSR), 2013 WL 3936193, at *3 n.2 (S.D. N.Y. July 26, 2013).

Under both Utah and New York law,[3] a breach of express warranty is predicated upon the existence of a warranty. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.*, 28 P.3d 669, 677 (Utah 2001); *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D. N.Y. 2013) (citing *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997 (N.Y. 1990)). Similarly, the MMWA requires either "a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Spence alleges the various advertisements constitute a written warranty.

The MMWA defines a written warranty as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." *Id.* § 2301(6)(A). And New York and Utah law also require specificity. *See, e.g.*, *SME Indus., Inc.*, 28 P.3d at 676 ("Express warranties presuppose that the parties have entered into some kind of contractual agreement, and arise out of promises by the warrantor guaranteeing or assuring a specific result."); *Cty. of Chenango Indus. Dev. v. Lockwood Greene Eng'rs, Inc.*,

---

[3] It is not readily apparent whether Utah or New York law apply to Spence's common of warrant claim. The offending advertisements were produced in Utah. But she apparently viewed them and acted upon them New York. The court does not resolve this question because neither party has addressed this issue and the claim as alleged fails under both states' laws.

11

494 N.Y.S.2d 832, 834 (N.Y. App. Div. 1985) (concluding the plaintiffs' claim for breach of express warranty should not be dismissed because they alleged "specific representations" upon which they relied").

Here Spence alleges that the warranty upon which she relied was the promise in a Vysera-CLS advertisement that consumers would lose a "significant amount" of body fat and experience a "significant reduction" in "fat around the waist" and lose "inch upon inch of unslightly fat" within 30 days. (ECF No. 102-1 ¶ 58, ¶ 125.) While 30 days is a specified period of time, neither the promise of weight loss nor the promise of reshaping of the body is a specific level of performance. In fact the language of the advertisement upon which she relied is notably unspecific, using words like "significant" and "inch upon inch" in place of particular, measureable results. Further, the advertisement language Spence has identified does not address the myriad of variables including total body weight, body composition, and diet of the individuals' taking the pill. What constitutes "significant weight loss" entirely depends on the initial weight of the person taking the pill. Finally, the sample advertisements that Spence attached to the SAC include the disclaimer "[i]ndividual results will vary." (*Id.* Exhibits B, C, & D.) These representations, especially when qualified by the disclaimer, are not sufficiently specific representations to constitute a warranty; therefore, amendment of Spence's warranty claims would be futile.

3. **New York General Business Law § 349**

Spence's claim for relief under New York General Business Law § 349 fails because § 349 does not create a private cause of action and, even if it did, the Federal Trade Commission regulates the deceptive acts § 349 prohibits. Section 349 makes "[d]eceptive acts or practices in

12

the conduct of any business, trade or commerce or in the furnishings of any service in [New York] unlawful." N.Y. GENERAL BUSINESS LAW § 349(a). To prevail on a claim under § 349, "A plaintiff . . . must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E. 2d 892, 895 (N.Y. 2000). But even assuming each element is met, § 349 carves out an exception when the alleged conduct is "subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission" or other relevant body, including the federal courts. N.Y. GENERAL BUSINESS LAW § 349(d). This is "a complete defense." *Id.*

Here Defendants Basic Research, Dennis Gay, and Mitchell Friedlander are subject to a Consent Order with the Federal Trade Commission, whereby the Federal Trade Commission has ordered

> that respondents, directly or through any corporation, subsidiary, division, or other device, in connection with manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any food, drug, or dietary supplement, in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, including through the use of trade names or endorsements, about the effect of such food, drug or dietary supplement on any disease, or about the effect of such food, drug or dietary supplement on the structure or function of the human body or other health benefits or weight loss benefits, unless at the time the representation is made respondents possess and rely upon a reasonable basis for the representation, which shall consist of competent and reliable scientific evidence.

(Consent Order, ECF No. 103-5.)[4] The order is valid until June 19, 2026, or twenty years after the most recent date of a complaint by the FTC, whichever comes first. (*Id.*) Spence argues that Vysera-CLS was not regulated by the Consent Order, but the plain language of the Consent Order contemplates any food, drug, or supplement produced by the parties to the Consent Order or their subsidiaries, thereby defeating that argument. (*Id.*) Because Vysera falls within the broad terms of the Consent Order, the FTC's regulation of it bars Spence's claim. Therefore, amendment to add a § 349 claim would be futile.

## ORDER

Because all of Spence's claims either fail to satisfy the pleading requirements or would otherwise be futile, the Motion is DENIED and the action is DISMISSED with prejudice.

DATED this 27th day of April, 2018.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[4] Although the court is typically limited in consideration of a motion to dismiss, or a motion for leave to amend, to the facts as asserted in the Complaint, here the court can consider the Consent Order because Spence puts significant focus on regulatory history of the various defendants, including citations to this particular Consent Order, *see Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014) ("A district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment."), and because the court can take judicial notice of the consent order, Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").